David N. GULLEY,
Petitioner/Respondent,

v.

Carolyn J. GULLEY,
Respondent/Appellant.

No. 62483.

Missouri Court of Appeals,
Eastern District,
Division One.

May 18, 1993.

David W. Suddarth, Muller & Suddarth, Troy, for appellant.

Edward J. Grewach, Troy, for respondent.

REINHARD, Judge.

Mother appeals from that portion of a dissolution decree awarding joint legal custody and primary physical custody of the couple's child to father. We affirm in part; remand in part.

The parties were married on September 8, 1983. The only child of the marriage, a daughter, was born on December 31, 1984. The parties separated in August, 1991; on September 17, 1991, father filed a petition for dissolution of marriage. He sought primary custody of the child. Mother answered and cross-claimed asking that the court order joint legal custody and primary physical custody to her.

Father retained primary custody of the child during the separation. While the dissolution was pending, mother filed a *pendente lite* motion seeking a transfer of custody. The trial court subsequently issued a *pendente lite* order which allowed father to retain primary custody and granted mother significant periods of temporary custody.

Immediately after the separation, mother moved into a girlfriend's home and began dating Bruce Shucart, a man she had met in October, 1990. He had also recently separated from his wife. Mother testified that she was seeing Mr. Shucart two times per week and that he spent the night at her house approximately two times per month. She stated that they had no plans to get married.

Dr. Lee Bailey Cox, a psychologist, testified by deposition that she had examined the parties' child on three separate occasions between September and November, 1991. She stated that the child had expressed displeasure with the fact that mother was dating Mr. Shucart. She further testified that, "in [her] opinion, it was much too soon [for the child] to have to deal with the presence of dating of either parent." However, Dr. Cox also felt that father and mother were very interested in the child's development and that the child needed "good consistent contact with both parents."

Both parties worked outside the home during the marriage. At the time of dissolution, mother worked as a nurse on Saturday and Sunday from 6:45 p.m. to 7:15 a.m. Father was a firefighter who worked three 24-hour shifts every nine days. He also worked part-time as a paramedic.

After the separation, father employed a nanny to take care of the child on those days he was working and mother did not have temporary custody. He testified that

he was at home to parent the child four days a week.

The trial court awarded joint legal custody of the child, finding that "this case [was] the most appropriate case for joint legal custody that [the] court [had ever] had before it." It awarded primary physical custody to father and temporary custody to mother eight days per month. Temporary custody was to be on days that father was working at the firehouse. Additionally, mother received "two 2–week periods of non-consecutive temporary custody" and custody rights on certain alternating enumerated holidays.

■ In reviewing a court-tried dissolution case, we must sustain the decree unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *B.S.H. v. J.J.H.*, 613 S.W.2d 453, 455 (Mo.App.1981). The award of child custody should not be disturbed unless we are firmly convinced that the welfare of the child requires some other disposition. *Lovin v. Lovin*, 787 S.W.2d 865, 866 (Mo.App.1990); *B.S.H.*, 613 S.W.2d at 455; *Hayden v. Hayden*, 588 S.W.2d 165, 167 (Mo.App.1979). Thus, in child custody proceedings the determination of the trial court is given greater deference than in any other type of case. *Cornell v. Cornell*, 809 S.W.2d 869, 873 (Mo.App.1991).

On appeal, mother contends that the granting of primary physical custody to father was "against the great weight of the evidence and was not in the best interest of the minor child." The thrust of mother's contention with regard to physical custody centers around her belief that the evidence at trial showed her to be better qualified to care for the child on a daily basis. She alleges that father's work schedule prevents him from being able to devote the time required of a primary custodian. We disagree.

■ The evidence at trial indicated that father would be at home to care for the child four days per week and that mother was available five days per week. The decree was drafted so that mother's temporary custody would be on days that father was at the firehouse. Furthermore, during the time between separation and dissolution, father had primary physical custody of the child and there is no evidence in the record that he was at that time unable to perform his primary caretaker duties. In fact, mother has not directed our attention to any evidence which showed father to be an unfit custodian. When the evidence on the issue of child custody does not clearly preponderate in favor of either parent, we will reverse the trial court's award only when there has been an abuse of discretion. *McDowell v. McDowell*, 670 S.W.2d 518, 521 (Mo.App.1984). No abuse exists here.

■ Mother also contends that the court erred in ordering joint legal custody because the parties did not share a commonality of beliefs concerning the parenting of the child. "Joint legal custody" means that the parents share the decision-making regarding the health, education and welfare of the child. Section 452.375.1(1), RSMo Supp.1990. An award of joint custody is authorized by § 452.375 if it is in the best interest of the child. A commonality of beliefs concerning parental decisions and the parties' ability to cooperate and function as a parental unit are important considerations when determining the best interest of the child. *Massman v. Massman*, 749 S.W.2d 717, 720 (Mo.App.1988).

■ In the present case, Dr. Cox, who was familiar with both parties, stated that father and mother cared greatly about the child and were very interested in her development. Although there was evidence that the parents' attitude towards each other was somewhat acrimonious, there is no indication that the parties were not emotionally equipped to cast those feelings aside when making decisions concerning the child's upbringing. In fact, mother sought joint legal custody in her cross-petition and

the judge later found this case to be ideal for that type of custody arrangement.

Following longstanding precedent, we presume that the trial court reviewed all the evidence and awarded custody in light of the best interest of the child. *Hartig v. Hartig,* 738 S.W.2d 160, 161 (Mo.App.1987). "This presumption is based upon the trial court's better position to judge not only the credibility of the witnesses and parties directly[,] but also their sincerity, character, and other trial intangibles which might not be completely revealed by the record." *Id.*

We find that the trial court's joint legal custody award is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law.

■ Mother finally contends that the trial court's joint legal custody award does not comply with the requirements of § 452.375.7. Section 452.375.7 prescribes that a joint custody decree "shall include a specific written plan setting forth the terms of such custody." Father admits the absence in the decree of a joint legal custody plan. However, he blames the omission on mother, claiming that she prepared the decree and thus should be estopped from raising the issue. Father has not cited any legal authority for this proposition. We find that this error necessitates a remand.[1]

That portion of the decree ordering joint legal custody and primary physical custody to father is affirmed. The case is remanded to the trial court for the purpose of amending its decree to include a joint legal custody plan. The record appears to be sufficient for the court to accomplish this without hearing additional evidence; however, this decision is for the trial court.

Affirmed in part; remanded in part.

AHRENS, P.J., and CRIST, J., concur.

---

1. We note that there are no specific guidelines setting forth what must be included in a joint custody plan and that the trial court should use a case by case approach when drafting a plan. *O.J.G. v. G.W.G.,* 770 S.W.2d 372, 376 (Mo.App. 1989). In the present case, however, both parties admit the absence of any joint legal custody plan.