**In re the MARRIAGE OF Dawn M. SPENCE and Brian Spence.**

**Dawn M. SPENCE, Petitioner–Appellant,**

v.

**Brian D. SPENCE, Respondent– Respondent.**

Nos. 21094, 21230.

Missouri Court of Appeals, Southern District, Division One.

April 30, 1997.

See also 922 S.W.2d.442.

Denise E. Thompson, Jefferson City, for appellant.

James K. Justus, Justus & McCullah, Forsyth, for respondent.

Before BARNEY, P.J., and PREWITT and GARRISON, JJ.

PER CURIAM.

Dawn Spence (Wife) appeals from a decree dissolving her marriage to Brian Spence (Husband).[1] She contends that the trial court erred in the division of property, in awarding joint custody of their daughter, and in setting the amount of child support. We affirm in part, and reverse and remand in part.

Husband and Wife were married on December 19, 1991, and had one child, a daugh-

---

1. This case involves two consolidated appeals from the same judgment by the same party. Thus, it carries two case numbers.

ter. The parties separated for the second and final time in January, 1994. Following the trial on Wife's petition for dissolution of marriage, the court classified some property as marital and some as separate, divided the marital property, awarded joint legal custody of the daughter with primary physical custody in Wife, and ordered Husband to pay child support of $384.43 per month.

## STANDARD OF REVIEW

A judgment in a dissolution case must be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *In re Marriage of Patroske,* 888 S.W.2d 374, 378 (Mo.App. S.D.1994). We view all the evidence and permissible inferences therefrom in the light most favorable to the decision of the trial court, and we disregard all contrary evidence and inferences. *Sinclair v. Sinclair,* 837 S.W.2d 355, 357 (Mo.App. W.D.1992).

## POINT I

In Wife's first point on appeal, she argues that the trial court erred in classifying as marital property a $25,525.21 interest in property referred to as the Spring Creek property. Before the marriage, Wife's parents made a gift to her of a modular home and property referred to as the Spring Creek lot (the home and lot are collectively referred to as the Spring Creek property). The title to both remained in Wife's sole name throughout the marriage. After Wife married Husband, the home was moved to the Spring Creek lot. Over the course of the marriage, improvements were made to the Spring Creek property including the addition of a two-car garage, a deck, a wooden fence, a concrete driveway, and storage shed, in addition to the installation of new siding, carpeting, bathroom fixtures, paneling, kitch-

en sink, disposal, faucets, mirror and tile in the bathrooms, and five new entry doors.

The trial court made the following findings regarding the Spring Creek property:

The Court finds that marital assets were used to improve the Spring Creek property. In addition, the labor and expertise of [Husband] was supplied in improving the property.[2]

The Court finds that materials, supplies and improvements, at a cost of $19,306.88, were put into the Spring Creek property. In addition, $12,000 from a marital loan was spent on the house by the parties. The Court finds that during the course of the marriage the principal of the loan was reduced in the amount of $7,218.33, leaving a balance owing of $4,781.67. The Court finds that as a result of marital contributions the value of the property has increased by $25,525.21[3] and the Court finds a marital interest in the Spring Creek property of $25,525.21.

It then awarded the marital interest in the Spring Creek property to Wife along with any value of the property in excess of the marital interest as her separate property.

According to Wife, the trial court erred in classifying any of the Spring Creek property as marital because it "was gifted to [Wife] by her parents prior to the marriage, was titled solely in [Wife's] name, and there was no substantial evidence to support a finding of an increase in the value of the property or that any alleged increase was due to [Husband's] marital contributions."

The trial court acknowledged that the Spring Creek property was acquired prior to the marriage and remained titled solely in Wife's name. It also acknowledged, however, that while § 452.330.2(5)[4] provides that "marital property" includes property acquired by either spouse subsequent to the marriage, it also includes the increase in value of property acquired prior to the marriage, but only if "marital assets," including

2. Husband was a building contractor.

3. No issue is raised about whether there was a mistake made by the preparer of the Judgment and Findings Of Fact And Conclusions Of Law in

adding the component figures to arrive at $25,-525.21.

4. All references to statutes are to RSMo 1994, unless otherwise indicated.

labor, have contributed to such increases and then only to the extent of such contributions. As the court said in *Meservey v. Meservey,* 841 S.W.2d 240, 245 (Mo.App. W.D.1992), "the increase in value of separate property can constitute marital property if marital assets or labor contributed to 'acquiring' that increase, but then, only in proportion to the marital contributions. According to the source of funds approach, the marital share of the increase in value is proportionate to the amount of marital funds or effort devoted to its acquisition."

■ Wife correctly asserts that in order for marital labor, effort, or services to result in a marital interest in the increased value of a spouse's separate property, there must be proof of (A) a contribution of substantial services; (B) a direct correlation between those services and the increase in value; (C) the amount of the increase in value; (D) performance of the services during the marriage; and (E) the value of the services, the lack of compensation, or inadequate compensation. *See Knapp v. Knapp,* 874 S.W.2d 520, 524 (Mo.App. W.D.1994); *Meservey v. Meservey,* 841 S.W.2d at 245–46.

■ In the instant case there was evidence that Husband expended personal effort and labor in connection with the work on the Spring Creek property. Although it is by no means clear from the record before us, it appears, however, that Husband made no attempt to place a particular value on such labor and services as a part of his claim that there was a marital interest in the property. Likewise, there is no indication that the trial court based its finding of a marital interest in the property on Husband's labor or services. Instead, the trial court found that "materials, supplies and improvements, at a cost of $19,-306.88, were put into the Spring Creek Property." It is also not clear from the record before us how the court arrived at that figure, although we gather that it was extrapolated from a list of expenditures introduced by Husband. It was the cost of the "materials, supplies and improvements" which the trial court used, in addition to the reduction of the construction loan, to arrive at the amount of the marital interest in the property. There is no indication in the record that

the trial court found that Husband's labor or service resulted in an increase of the Spring Creek property's value. The argument of Wife to the contrary is without merit.

■ Wife also argues, however, that the trial court's finding that the value of the property had increased by $25,525.21 was not supported by substantial evidence. In support, Wife correctly points out that there was no evidence of the property's value at the time of the marriage. While Husband testified that, in his opinion, the property was worth $80,000 at the time of trial, Wife argues that without evidence of the value of the property at the time of the marriage, there is nothing with which to gauge whether there has been an increase. Without that evidence, she contends there was no basis to conclude that there had been an increase in value and, if so, how much of it was attributable to the improvements.

In support, Wife cites *Winter v. Winter,* 712 S.W.2d 423, 427 (Mo.App. E.D.1986), which held that "[i]n order to accomplish a proper division under the 'source of funds' rule, it is necessary to know the values of the property at the time of the marriage, the values at the time of the hearing and the source of funds responsible for any increases in value." *See also Brooks v. Brooks,* 911 S.W.2d 631, 633 (Mo.App. E.D.1995) (holding that it is necessary to determine the owner spouse's equity in separate property as of the date of the marriage in order to calculate the value of the marital and nonmarital interests in the property). As pointed out in *Brooks,* however, a failure to establish the value of the property at the time of the marriage does not necessarily require a finding that any increase in value during the marriage was nonmarital. *Id.* at 634.

We agree that, based on these authorities, there was insufficient evidence to support a finding of a $25,525.21 marital interest in the Spring Creek property. Because there was no evidence from which the trial court could have based its finding of an increase in the value of the Spring Creek property after the marriage which was attributable to marital contributions, we remand the case for further proceedings. On remand, the trial court

should determine the increase in value of the property, if any, since the date of marriage which has been attributable to marital contributions, declare that increase as marital property, and utilize its discretion in awarding the martial property. In doing so, it should permit the parties to introduce evidence on those issues. *See Brooks v. Brooks,* 911 S.W.2d at 633–34.

## POINT II

In her second point, Wife contends that the trial court abused its discretion by awarding a disproportionate amount of the marital property to Husband. As we understand this point, it is premised on Wife's argument that the trial court erred in classifying as marital property the $25,525.21 interest in the Spring Creek property for the reasons specified in her first point. She argues that if none of the Spring Creek property had been considered as marital, the result would have been that she received marital property valued at $6,200,[5] or 18% of the marital property, while the marital property awarded to Husband totaled $22,850 in addition to a $6,200 bank account,[6] or 82%.

■■■ Pursuant to § 452.330.1, the trial court is to divide the marital property in such proportions as it deems just after considering all relevant factors including five which are specifically enumerated. Wife argues that none of those specific factors justify a division of the marital property so heavily weighted in favor of Husband. A trial court, however, has considerable discretion in dividing marital property, and an appellate court will only interfere if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of that discretion. *Schneider v. Schneider,* 824 S.W.2d 942, 947 (Mo.App. E.D.1992). "A trial court in a dissolution case is required to make an equitable, not an equal, division of marital property." *Barth v. Barth,* 790 S.W.2d 246, 251 (Mo.App. E.D.1990).

■■ Without deciding whether the division of marital property here would constitute an abuse of discretion, we note that Wife's argument assumes that none of the Spring Creek property can properly be classified as marital property. We are unable to draw that conclusion. We decided in the first point only that the classification of a $25,525.21 interest in that property as marital was not supported by the record and concluded that the case should be remanded. On remand, it may be that the trial court will decide, based on proper evidence, that this property has experienced an increase in value since the marriage which is attributable to marital contributions and designate that portion of the increase as marital. We are unable to exclude the possibility that such a finding could amount to an interest of $25,525.21 or even more, and that all or a portion of it may be awarded to Wife. The fact that there was insufficient evidence to permit a determination of the amount of any increase in value attributable to marital contributions does not exclude the possibility that a finding of a marital interest may still result on remand. *See Brooks v. Brooks,* 911 S.W.2d at 634.

Wife's argument in this point is wholly dependent on our acceptance of her contention that the trial court erred in classifying any interest in the Spring Creek property as marital. We did not so hold in Point I. We are, therefore, unable to conclude that the premise of Wife's second point is accurate, i.e., that no marital interest resulted in the Spring Creek property. Such a determination must await the trial court's decision on remand.

## POINT III

■■ In her third point relied on, Wife contends that the trial court erred in awarding the parties joint legal custody of their daughter. According to Wife, a finding of joint legal custody was inappropriate because "the record unequivocally reflects a pattern of abuse and violence by [Husband] toward Wife and considerable acrimony between the

---

**5.** From the record, it appears that Wife was actually awarded marital property, aside from the Spring Creek property, totaling $5,200.

**6.** The trial court actually found, however, that the bank account had been spent by the parties on a vacation and no longer existed. It found only that if it did exist, it was awarded to Husband.

parties which the trial court failed to consider and address in making its custody determination."

■ "Following longstanding precedent, we presume that the trial court reviewed all the evidence and awarded custody in light of the best interest of the child." *Gulley v. Gulley*, 852 S.W.2d 874, 877 (Mo.App. E.D. 1993). "This presumption is based upon the trial court's better position to judge not only the credibility of the witnesses and parties directly but also their sincerity, character, and other trial intangibles which might not be completely revealed by the record." *Hartig v. Hartig*, 738 S.W.2d 160, 161 (Mo.App. E.D.1987).

■ "The Missouri legislature has clearly stated that it is the public policy of Missouri to assure children frequent and meaningful contact with both parents after dissolution of their parents' marriage." *Burkhart v. Burkhart*, 876 S.W.2d 675, 679 (Mo.App. W.D.1994); *see also* § 452.375.4, RSMo Supp.1995. While it is true that § 452.375.5, RSMo Supp.1995, requires the trial court to consider all existing options as to custody and then award the custody arrangement which is in the best interest of the child, *Chapman v. Chapman*, 871 S.W.2d 123, 125 (Mo.App. E.D.1994), it has been said that "[t]he courts are required to consider joint custody as the first option, even if it is opposed by one parent." *Burkhart v. Burkhart*, 876 S.W.2d at 679. When two parents have "joint legal custody" of a child, they share the decision-making rights, responsibilities, and authority regarding the health, education and welfare of the child. Section 452.375.1(1), RSMo Supp.1995. In determining whether joint legal custody is in the best interest of the child, the commonality of beliefs concerning parental decisions and the ability of the parents to cooperate and function as a parental unit for the welfare of the child are critical. *Massman v. Massman*, 749 S.W.2d 717, 720 (Mo.App. E.D.1988). The preference for joint custody "is not that of a forced joint custody in order to induce the parents to find a common ground." *Margolin v. Margolin*, 796 S.W.2d 38, 49 (Mo.App. W.D.1990). Rather, it is a preference in favor of parents who show the willingness and ability to share the rights and responsibilities of child-rearing even after they have dissolved the marriage. *Id.*

The trial court made the following findings concerning custody:

This Court believes and has found that joint legal custody is in the best interest of the minor child. There was substantial evidence presented and the Court believes that either party would be an appropriate custodian for the minor child. During the pendency of this action, the child has had frequent and meaningful contact with both parents and there is no suggestion by either party that this contact is in any way inappropriate. The Court recognizes that during the course of the dissolution proceeding the parties had difficulty communicating with one another. The Court finds that both parties are mature individuals and capable of setting aside the animosity that exists in order that they may communicate with one another concerning the child. Both parents clearly are concerned about the best interest of the child and it would appear to the Court that because of their intelligence and maturity the parties can set aside their feelings toward one another and communicate with one another concerning the child. The Court was impressed by the length to which [Husband] had gone to establish a meaningful relationship with the child and believes that [Husband] should have the right to take part in the decision making process concerning the child.

Substantial evidence was adduced at trial to support a finding of joint legal custody. It is clear from the record that both Husband and Wife sincerely care about their daughter and are interested in her development. After Husband and Wife separated in January 1994, Husband and their daughter began attending the Parents as Teachers program on a weekly basis. Husband explained that he became involved in the program to acquire some guidance regarding parenting and to help him and his daughter through a difficult time. There was also testimony that Husband and his daughter had a close relationship.

Husband testified that decisions concerning his daughter's health and welfare should be made by both parents jointly, and that he would be able to communicate with Wife concerning those matters. Even though Wife testified that she would not be able to communicate with Husband concerning their daughter, "[j]oint custody may not be denied solely because one parent opposes such an award." *Margolin v. Margolin,* 796 S.W.2d at 50; *see also* § 452.375.5(1), RSMo Supp. 1995.

Wife argues that the joint legal custody finding is inappropriate due to the considerable acrimony existing between Husband and Wife. "Although there was evidence that the parents' attitude towards each other was somewhat acrimonious, there is no indication that the parties were not emotionally equipped to cast those feelings aside when making decisions concerning the child's upbringing." *Gulley v. Gulley,* 852 S.W.2d at 876.

In considering child custody determinations, we presume that the trial court reviewed all the evidence and awarded custody based on the child's best interests. *Id.* at 877. "We defer to the trial court's findings on custody matters unless we are convinced the best interests of the child require a different disposition." *In re Marriage of Barnes,* 855 S.W.2d 451, 454 (Mo.App. S.D. 1993). Because we are not convinced that the child's best interests require a different custodial arrangement, Wife's third point is denied.

### POINT IV

In Wife's fourth and final point on appeal, Wife contends that:

The trial court erred in the amount of child support ordered because the amount ordered erroneously applies the law, is unsupported by substantial evidence, and is against the weight of the evidence in that the court utilized an income of $1,650.00 for [Husband] in completing Form 14 when the evidence was that [Husband] earned $2,500.00 per month and child care was inappropriately included in the computation for only nine months of the year.

"An award of child support is within the sound discretion of the trial court." *Price v. Price,* 921 S.W.2d 668, 673 (Mo.App. W.D.1996). "We will not substitute our judgment for that of the trial court absent a manifest abuse of discretion, and we will not disturb an award of child support unless the evidence is 'palpably insufficient' to support it." *Holmes v. Holmes,* 878 S.W.2d 906, 909 (Mo.App. E.D.1994).

"Since the Form 14 calculation is the presumptively correct child support amount, the trial court must determine the proper Form 14 calculation." *M.B. by and through P.B. v. J.N.,* 926 S.W.2d 929, 931 (Mo.App. E.D. 1996). "The trial court may adopt the Form 14 calculation of either party or make its own calculations." *Id.* In the instant case, despite the fact that both Husband and Wife submitted proposed Form 14s, the trial court made its own Form 14 calculations.

In the court's Form 14, a monthly gross income of $1,650 per month was attributed to Husband rather than $2,500 per month which Wife argues was the appropriate amount. In support, she argues that Husband testified that he earned $80,000 in 1993, earned $2,500 per month in 1994, and was earning $2,500 per month at the time his deposition was taken.

The trial court made the following findings as to Husband's income:

The Court finds that except for 1993, [Husband] has never averaged $2,500.00 per month. The Court finds that in 1993 [Husband] did earn considerably more that $2,500.00 per month, but this was not a typical year.

The Court finds that [Husband] could reasonable [sic] anticipate to earn an annual gross income of $19,800.00 or $1,650.00 per month.

The trial court's findings are consistent with the evidence offered at trial. Husband testified that although he did earn $2,500 during several months in 1994, his gross income for that year was about $18,700 and that he had earned an average of $1,600 per month up to the date of trial in 1995. He projected his 1995 income to be between $18,000 and $20,000. Therefore, the trial

court's finding that Husband's monthly gross income was $1,650 for Form 14 purposes was supported by the evidence. The evidence did not support Wife's assertion that Husband's monthly gross income was $2,500. This portion of her point is without merit.

Wife also contends that the trial court erred in giving her credit for child care costs during only nine months of the year in making its Form 14 calculations. At trial, Wife testified that their daughter attended day-care year-round at a cost of $57.50 per week. This was despite the fact that Wife did not work throughout the winter. Wife testified that she placed her daughter in day-care even when she was not working because of the positive influence it had, and because they would not accept her unless she attended full-time.

At trial, the court posed the following questions:

THE COURT: Okay. Now, during the wintertime, if I understand right, you keep the child in day-care and you pay $57.50 a week, but that doesn't have anything to do with the fact—with your working because you're not working, right?

[WIFE]: Yes.

THE COURT: So, that day-care is not a work-related-day-care expense?

[WIFE]: No.

THE COURT: [Wife's attorney], is that on your Form 14 as a work-related expense?

[WIFE'S ATTORNEY]: Yes, it is, Your Honor, because we never know exactly how long the season is going to be. Every year the season is longer at the restaurant, and we're hoping that it will start being year around so there wouldn't be any down time, and my client is always looking for, you know, winter employment.

The trial court made the following finding:

The Court recognizes [Wife's] desire to have the child in day-care twelve months a year. However, the Court finds that day-care is unnecessary three months out of the year and if [Wife] wishes the luxury of twelve month a year day-care it will be her obligation to pay day-care for the three months during which she is not working.

The custodial parent's "reasonable work-related child care costs" are to be utilized on Line 4.b of Form 14. Here, the trial court did not err in limiting the child care expense to nine months of the year in its child support calculation. The trial court's finding is supported by the evidence and is not an abuse of discretion.

Wife's fourth point is denied.

Those portions of the judgment classifying the Spring Creek property as partly marital and dividing the marital property are reversed. The case is remanded to the trial court for additional proceedings on those issues consistent with this opinion. The judgment is otherwise affirmed.