**Jennifer Lynn AL–YUSUF, Respondent,**

**v.**

**Yusuf Mashoor AL–YUSUF, Appellant.**

**No. WD 54352.**

Missouri Court of Appeals,
Western District.

May 26, 1998.

Luanne F. Kurth, Kansas City, for appellant.

Robert H. Dunsford, Kansas City, for respondent.

Before HANNA, P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

LAURA DENVIR STITH, Judge.

Yusuf Mashoor Al–Yusuf appeals the trial court's entry of judgment in the dissolution of his marriage to Jennifer L. Al–Yusuf. He claims the court erred in entering a decree which ordered the parties to share joint legal custody but which failed to provide a joint legal custody plan. We agree. Section 452.375.8 mandates the entry of a joint legal custody plan when joint custody is ordered.

As Mr. Al–Yusuf claims, and Ms. Al–Yusuf concedes, the order signed by the court also improperly failed to include a full legal description of the marital home. We remand for correction of both errors.

Mr. Al–Yusuf further claims the trial court erred in dividing the marital property without listing the specific value of that property as required by local rule. In light of the fact that we are remanding on other grounds, this issue can be resolved on remand.

For the first time on appeal, Mr. Al–Yusuf also claims that the court erred in awarding the parties' still pending personal injury claims to Ms. Al–Yusuf, claiming that they would not become marital property capable of division until the settlement was finalized. Prior cases have recognized, however, that a pending claim can be characterized as marital property if the injury occurred during the marriage. However, on remand, the court may consider evidence as to whether these claims have now been finally settled and as to whether all or only part of them are properly characterized as marital, and may adjust its award if appropriate.

Mr. Al–Yusuf further claims that the court erred in awarding him all of the marital debt as lump sum maintenance, without a determination that he was able to make such payments. The court made sufficient findings in this regard. Because the majority of the debt awarded was a mortgage on a house awarded to Mr. Al–Yusuf, it cannot be considered "maintenance," however, for the purpose of maintenance is to provide for a spouse unable to meet her needs. Requiring Mr. Al–Yusuf to pay the debt owed on property awarded to Mr. Al–Yusuf is not maintenance to Ms. Al–Yusuf. The court on remand should revise its order to indicate that the award of debt to Mr. Al–Yusuf is a part of the division of property.

Mr. Al–Yusuf's final three claims of error concern the award of child support. He first claims that the court erred in rejecting the parties' Form 14 calculations and calculating

its own without finding that the Form 14 amount was unjust and inappropriate. We disagree. The judge rejected, rather than rebutted, the parties' Form 14s, made his own Form 14 calculation, and ordered child support in that amount. Mr. Al–Yusuf also claims that the court erred in its calculation of child support, because it overestimated, by about $10.00 per month, the amount of Ms. Al–Yusuf's child care costs. Finally, Mr. Al–Yusuf claims that the court erred in making the child support award retroactive, as the court failed to give him credit for amounts he had previously paid. The trial court can consider both of these issues on remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jennifer L. Al–Yusuf and Yusuf Mashoor Al–Yusuf, were married on August 23, 1991. At the time, Ms. Al–Yusuf was eighteen and Mr. Al–Yusuf was twenty-three years old. On April 9, 1992 the couple had a son, Ryan Youssif Al–Yusuf. On May 9, 1996, the parties separated. During the separation the child lived with Ms. Al–Yusuf. She filed a Petition for Dissolution on August 9, 1996. Mr. Al–Yusuf filed his Answer and Cross–Petition on September 6, 1996. Both parties requested sole custody of their son, and Mr. Al–Yusuf requested maintenance. Before trial, the parties filed stipulations concerning the custody, visitation, and support of their child. The court entered an order based on these stipulations, *pendente lite*, effective January 1, 1997, awarding temporary custody of Ryan to his mother, granting visitation to Mr. Al–Yusuf, and ordering Mr. Al–Yusuf to pay $280.00 per month in child support.

A trial was held on February 25, 1997, in Clay County. At trial, both Ms. Al–Yusuf and Mr. Al–Yusuf testified that they were not requesting maintenance, and both agreed that physical custody should remain with Ms. Al–Yusuf, with reasonable visitation to Mr. Al–Yusuf. Mr. Al–Yusuf testified that he was current in paying the court-ordered child support of $280.00 per month. Ms. Al–Yusuf

testified that her husband had paid her $280.00 per month in child support from June 1996 through December 1996 and $260.00 for February 1997. Thus, if Ms. Al–Yusuf's testimony were believed, Mr. Al–Yusuf was delinquent in his court-ordered child support as to the $280.00 due in January 1997 and was $20 in arrears for February 1997; if his testimony were believed, he was current in his payments. Ms. Al–Yusuf testified to having received threats from her husband to remove the child from the country, to kill her, and to burn down the house. She also testified that Mr. Al–Yusuf had been physically abusive to her during the marriage. Mr. Al–Yusuf denied threatening to remove the child from the country. He admitted to hitting Ms. Al–Yusuf one time.

Ms. Al–Yusuf testified that she earned $1,463.00 per month. Her income and expense statement indicated that she earned $675.29 bi-weekly. Ms. Al–Yusuf testified that Mr. Al–Yusuf earned $3,333.00 per month during their marriage. Mr. Al–Yusuf testified that he grossed $70.00 per night and that he worked six days a week, which comes to somewhat more than $1,800.00 per month. His income and expense statement listed his average monthly income as $1,100.00. Mr. Al–Yusuf's 1994 W–2 form and statement of income indicated Mr. Al–Yusuf's income that year was $37,707.00 per year, or $3,142.25 per month. Information submitted at trial indicated that Mr. Al–Yusuf's 1996 gross receipts from his business were $23,040.00, or $1,920.00 per month, for that year.[1]

Mr. and Ms. Al–Yusuf both submitted property statements which indicated the following values for their marital property and debts:[2]

| Ms. Al–Yusuf | Mr. Al–Yusuf |
| --- | --- |
| A $72,000.00 home, with a $54,300.00 mortgage, leaving $17,700.00 in equity; | A $69,000.00 home, with a $54,000.00 mortgage, leaving $15,000.00 in equity; |
| * * * * * | * * * * * |
| a Ford Taurus worth $4,875.00; | a Ford Taurus worth $6,000.00; |
| * * * * * | * * * * * |
| a Chevy Caprice worth $3,100.00; | a Chevy worth $1,200.00; |
| * * * * * | * * * * * |
| $225.00 in checking in Members America Credit Union account; | not listed |
| * * * * * | * * * * * |
| $80.00 in savings in Members America Credit Union account; | not listed |
| * * * * * | * * * * * |
| $10.00 cash on hand; | not listed |
| * * * * * | * * * * * |
| a life insurance policy on Mr. Al–Yusuf with a face value of $50,000.00; | not listed |
| * * * * * | * * * * * |
| a life insurance policy insuring Ryan Al–Yusuf for $50,000.00; | not listed |
| * * * * * | * * * * * |
| a life insurance policy insuring Ms. Al–Yusuf for $85,000.00; | not listed |
| * * * * * | * * * * * |
| A BPI Communications, Inc. Retirement/Savings Plan worth $187.98; $187.98; | not listed |
| * * * * * | * * * * * |
| personal property in Ms. Al–Yusuf's possession worth $905.00; | not listed |
| * * * * * | * * * * * |
| personal property in Mr. Al–Yusuf's possession worth $3,415.00; | not listed |
| * * * * * | * * * * * |

1. After trial, Mr. Al–Yusuf filed a motion to supplement the record with different information about his 1996 taxes, which tended to show that his gross income that year was only $17,280.00. So far as the record reveals, the court did not rule on this motion.

2. Mr. Al–Yusuf listed the house in two places on his form, under both marital and nonmarital property. As there was no dispute at trial about the character of the house, his listing of its value is included above.

| | |
|---|---|
| a $200.00 debt to Visa; | a $2,046.41 debt to Visa; |
| * * * * * | * * * * * |
| a $5,705.00 debt to MBNA; | not listed |
| * * * * * | * * * * * |
| a $1,000.00 debt to Dorothy Balke; | not listed |
| * * * * * | * * * * * |
| and an estimated potential value of $8,000.00 in pending *personal injury litiga-tion* arising out of a car accident | not listed |
| * * * * * | * * * * * |
| not listed | a $3,500.00 debt to Abdelnaby Mahmoud; |
| * * * * * | * * * * * |
| not listed (Ms. Al-Yusuf testified that these savings bonds were in her grandmother's possession and in their son's name. | $2,000.00 in savings bonds |
| * * * * * | * * * * * |

While Mr. Al-Yusuf did not list the pending lawsuit arising out of the car accident in his property statement, the parties both agreed at trial that the value of the insurance settlement offer for injuries they sustained in a car accident totaled approximately $10,-000.00. Of this amount, $7,950.00 was for Mr. Al-Yusuf's injuries and $2,761.00 was for Ms. Al-Yusuf's injuries. The basis of this agreement was apparently a "settlement letter" from the parties' personal injury attorney which stated:

> [T]he insurance carrier has offered the respective sums of $2,761.00 for [Ms. Al-Yusuf's] claim and $7,950 for [Mr. Al-Yusuf's] claim. They have indicated that this is the most that they will pay. They also indicated that both parties would need to sign releases which would finalize any and all claims that they would have, including any loss of services claim, etc.
>
> In that regard, due to dispute in your domestic case, it appears that the domestic judge will need to rule on the [apportionment] of these settlements. In that regard, I will wait until I have heard from your respective attorneys.

The parties disagreed as to what portion of potential settlement proceeds arising out of the accident each party should receive and, on appeal, disagree as to whether it was proper to treat these proceeds as marital.

On April 4, 1997, the court entered its Judgment of Decree of Dissolution of Marriage. The court ordered Mr. Al-Yusuf to pay $440.00 per month child support, retroactive to August 9, 1996. The court awarded joint legal custody of Ryan to both parents, with actual physical custody awarded to Ms. Al-Yusuf and reasonable visitation awarded to Mr. Al-Yusuf. The court stated that if the parties could not agree as to reasonable visitation, then the court's outlined schedule would apply.

The court awarded the settlement proceeds expected from the parties' car accident to Ms. Al-Yusuf, and found such proceeds had a value of $10,711.00. The remaining property the court awarded without stating the property's value. In addition to the settlement proceeds, Ms. Al-Yusuf was awarded the Ford Taurus, the Members America Credit Union account, all personal property in her possession, and the BPI Communications, Inc. Retirement/Savings Plan. Under the parties' valuations of the property in their submissions below, the value of the property awarded to Ms. Al-Yusuf was between $16,993.98 and $18,118.98 (the only disputed value given concerned the value of the Ford Taurus) plus personal property in her possession.

Mr. Al-Yusuf was awarded the Chevrolet, all personal property in his possession, and the family home located at 4400 N. Olive. The value of this home, based on the parties' submissions below, was between $69,000 and $72,000. The total value of the property awarded to Mr. Al-Yusuf was thus between $70,200 and $75,100 (the disputed value given concerned the equity in the house and the value of the Chevrolet). The court also ordered Mr. Al-Yusuf to pay the parties' debt on the following items:

> as support and maintenance to [Ms. Al-Yusuf], or to the creditor directly on behalf of [Ms. Al-Yusuf] and [Mr. Al-Yusuf] shall indemnify and hold [Ms. Al-Yusuf] harmless from the following debts:

a. MBNA America Gold Mastercard Acct # 5401–2622–3614–5835 (plus costs and accruing interest)

$5,400

b. North Kansas City Hospital 612

c. Dorothy L. Balke

1,000

d. Abdelnaby Mahmoud

3,500

e. Mohamad Kassir

2,200

f. Bancoklahoma [mortgage]

54,287.40

[Ms. Al–Yusuf] shall have a judgment against [Mr. Al–Yusuf] for support and maintenance as a lump sum maintenance award for these debts, to be satisfied by paying the amounts directly to the creditor, either in lump sum or regular and periodic payments, or to [Ms. Al–Yusuf]. The Court further orders that these debts are not dischargeable in bankruptcy.

Mr. Al–Yusuf was thus ordered to pay debt totalling approximately $67,000; the majority of this debt was the mortgage on the house awarded to him. This appeal by Mr. Al–Yusuf followed.

## II. STANDARD OF REVIEW

The relevant standard of review is set out in *In re Marriage of Barnes,* 855 S.W.2d 451, 454 (Mo.App.1993):

Our review of a dissolution decree is governed by Rule 73.01(c) and the principles enunciated in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). Thus we must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law.

When determining the sufficiency of the evidence, we accept as true the evidence and inferences from the evidence that are favorable to the trial court's decree and disregard contrary evidence. All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached.

. . . .

We give due regard to the trial court's opportunity to judge the credibility of the witnesses. The trial judge may believe or disbelieve all, part, or none of the testimony of any witness, and the court may disbelieve testimony even when uncontradicted.

We defer to the trial court's findings on custody matters unless we are convinced the best interests of the child require a different disposition.

*Barnes,* 855 S.W.2d at 454 (citations omitted).

## III. JOINT LEGAL CUSTODY PLAN

■■■ Mr. Al–Yusuf claims that the court erred in entering an order of joint legal custody without also entering a joint legal custody plan. Section 452.375.8 states:

*Any decree providing for joint custody shall include a specific written plan setting forth the terms of such custody.* Such plan may be suggested by both parents acting in concert, or one parent acting individually, or *if neither of the foregoing occurs, the plan shall be provided by the court.* The plan may include a provision for mediation of disputes in all cases, the joint custody plan approved and ordered by the court shall be in the court's discretion.

§ 452.375.8, RSMo Cum.Supp.1997 (emphasis added).

There are two types of "joint custody:" joint legal custody and joint physical custody. Section 452.375.1 defines these terms as follows:

(1) **"Joint legal custody"** means that the parents share the decision-making rights, responsibilities, and authority relating to the health, education and welfare of the child, and, unless allocated, apportioned, or decreed, the parents shall confer with one another in the exercise of decision-making rights, responsibilities, and authority;

(2) **"Joint physical custody"** means an order awarding each of the parents significant periods of time during which a child resides with or is under the care and supervision of each of the parents. Joint

physical custody shall be shared by the parents in such a way as to assure the child of frequent and continuing contact with both parents.

§ 452.375.1, RSMo Cum.Supp.1997.

Although Section 452.375.8 does not explicitly state whether a plan is required when joint legal custody is ordered, it can be inferred from use of the inclusive term "joint custody" in the statute that both types of joint custody are subject to this requirement, and in fact *Gulley v. Gulley*, 852 S.W.2d 874 (Mo.App.1993), specifically held that a joint custody plan is required in cases in which only joint legal custody is granted. In *Gulley,* the trial court granted primary physical custody of the child to the father, and granted joint legal custody to both parents. The mother claimed the trial court erred in failing to include a specific written plan as required by Section 452.375.8. The father conceded that the absence of a joint legal custody plan in the decree was error. The court held that the error required remand "for the purpose of amending [the court's] decree to include a joint legal custody plan." *Id.* at 877. *Accord, O.J.G. v. G.W.G.*, 770 S.W.2d 372 (Mo.App.1989).

We agree with *Gulley* that a joint legal custody plan was required. In the present case, the court ordered joint legal custody, but its order did not include a joint custody plan. Instead, the order simply stated that the parties:

shall have joint legal custody of the minor child Ryan Youssif Al–Yusuf, with actual physical custody being with [Ms. Al–Yusuf]. Reasonable visitation shall be grant-ed to [Mr. Al–Yusuf]. In the event [Ms. Al–Yusuf] and [Mr. Al–Yusuf] are not able to agree on what constitutes reasonable visitation, then [Mr. Al–Yusuf] shall have visitation rights as follows . . . ."

The court then set out a visitation schedule to be used if the parties could not otherwise agree on visitation.[3] This does not comply with the requirements of Section 452.375.8.

As Ms. Al–Yusuf notes, Mr. Al–Yusuf failed to raise the lack of a joint custody plan below. He suggests that this was because he did not know it would not be included in the order until the Court signed it, because the proposed order was prepared and submitted by counsel for Ms. Al–Yusuf without input from him. In any event, as he notes, the statute requires the court to adopt a joint custody plan even when neither of the parties suggests such as plan. We agree with Mr. Al–Yusuf that, in light of the requirement of the statute that the court adopt its own plan if the parties do not propose one, the failure of the trial court to adopt a joint custody plan constitutes plain error.

█ Mr. Al–Yusuf asks us to direct the trial court on remand to adopt a plan which includes specific provisions for determination of a variety of issues, such as decision-making rights and responsibilities, how to resolve disagreements, notice requirements for changes in education and day care or health plans, and so forth. While we agree that it would be helpful if the court adopted a plan addressing those issues, we find that neither the case law nor the statutes set out specifically what matters a joint custody plan must

---

3. The schedule to be used if the parties could not agree on visitation was as follows:

a) *WEEKENDS:*
Husband may have the child spend with him alternate weekends. For the purposes of this Order, a weekend shall be deemed to commence at 5:00 p.m. on Friday and end at 6:00 p.m. on Sunday.

b) *HOLIDAYS:*
The child shall spend the following holidays with Husband in even-numbered years and Wife in odd-numbered years: Easter, Independence Day and Christmas Eve. The child will spend the following holidays with Husband in odd-numbered years and Wife in even-numbered years: New Year's Day, Memorial Day, Labor Day and Christmas Day. In addition to the foregoing visi-tation each parent shall be entitled to have the child with them on the parent's respective birthday and Wife shall be entitled to have the child on Mother's Day and Husband shall be entitled to have the child on Father's Day, regardless of all other provisions herein for visitation. Upon the child's respective birthday, Wife shall have the child in odd numbered years and Husband shall have the child in even numbered years.

c) *OTHER REASONABLE TIMES:*
1. Husband shall have the right to communicate by telephone at any reasonable time or by mail with the child while he is in the custody of Wife.
2. Husband shall have visitation rights with the minor child at such other times as are reasonable and as the parties mutually agree.

address. Section 452.375.8 does state that the plan must be in writing, that it must set forth the terms of joint custody, and that it may include a provision for the mediation of disputes. Other than this, as *Gulley* notes, because "there are no specific guidelines setting forth what must be included in a joint custody plan ... the trial court should use a case by case approach when drafting a plan." *Gulley*, 852 S.W.2d at 877 n. 1.

*O.J.G. v. G.W.G.*, similarly held that, although model plans were helpful, "the court should use a case by case approach to determine the best interest of the child and to tailor the plan to meet that interest." *O.J.G.*, 770 S.W.2d at 376. In that case, the court found that a joint custody plan which provided for counseling of the parties, set times for each parent to have physical custody, and required progress reports to be filed with the court was sufficiently specific to satisfy Section 452.375. *Id.*

Of course, it would be preferable that the plan adopted be more detailed than that in *O.J.G.*, and that it address the types of issues raised by Mr. Al–Yusuf. However, it is up to the trial court to determine the specific matters to be included in the plan on a case-by-case basis. We remand so that the court can do so here.

## IV. FAILURE TO INCLUDE LEGAL DESCRIPTION OF REAL ESTATE

■ Mr. Al–Yusuf claims that the court erred in failing to include the legal description of the marital property awarded to him, as required by Section 452.330.6. Ms. Al–Yusuf concedes this was error. As a full legal description of the marital home is required, we remand with instructions to the trial court to enter the legal description of the real property awarded to Mr. Al–Yusuf. *Fields v. Fields*, 584 S.W.2d 163 (Mo.App. 1979).

## V. FAILURE TO LIST VALUES OF MARITAL PROPERTY AWARDED

Mr. Al–Yusuf claims that the court erred in its division of marital property by awarding specific items of marital property without listing a value, when those items were in dispute. Mr. Al–Yusuf acknowledges that "there are no statutory or case law requirements that marital property be valued by the Trial Court ... ". *See Dardick v. Dardick*, 670 S.W.2d 865, 868 (Mo. banc 1984); *Holland v. Holland*, 865 S.W.2d 867, 870 (Mo. App.1993). He argues, however, that Clay County Circuit Court Local Rule 68.3.1 requires the judge to state the values of the marital property divided, and that the trial judge had a duty to follow that rule even though no one called it to his attention or requested him to make such findings, and even though such findings were not included in the proposed order submitted to the court. We need not resolve this issue, for we are remanding for the trial judge to amend his order in the other respects. He can, at that time, also amend the order to include the property values in question.

## VI. AWARD OF PERSONAL INJURY CLAIMS

■ Mr. Al–Yusuf claims that the court erred in awarding the parties' personal injury claims to Ms. Al–Yusuf, as they were not perfected and, therefore, were not "marital property" capable of division. Mr. Al–Yusuf failed to raise this issue below, however, and we, thus, review it only for plain error.

We see no plain error here. The parties agree that a finalized personal injury settlement is marital property subject to the court's division. *Zimmer v. Zimmer*, 770 S.W.2d 514 (Mo.App.1989); *Gonzalez v. Gonzalez*, 689 S.W.2d 383, 386 (Mo.App.1985); *Trapani v. Trapani*, 684 S.W.2d 500, 503 (Mo.App.1984) ("[M]onies received in a personal injury action constitute a marital asset subject to equitable distribution in dissolution proceedings."); *Nixon v. Nixon*, 525 S.W.2d 835 (Mo.App.1975). Mr. Al–Yusuf offers no public policy reason why an agreed upon, but unfinalized, settlement should not also be subject to division, and in fact a number of cases have held that an unfinalized settlement may be characterized and awarded as marital property where, as here, the claim is for injuries which occurred during the marriage. *See, e.g., McClement v. McClement*, 681 S.W.2d 500, 502 (Mo.App. 1984); *In re Marriage of Williams*, 581 S.W.2d 97, 98 (Mo.App.1979) (division of mar-

ital property, including a spouse's pending personal injury cause of action, affirmed).

The fact that a pending claim may be awarded as marital property does not mean that it is always proper to characterize the entire claim as marital property, however. To the contrary, as recognized in cases such as *Mistler v. Mistler*, 816 S.W.2d 241, 249–52 (Mo.App.1991), and *Pauley v. Pauley*, 771 S.W.2d 105, 107–110 (Mo.App.1989), an "analytic" approach should be used in determining how much of a settlement is marital, so that " 'the purpose for which the recovery is received controls its classification; a recovery, or portion thereof, being classified as that which it is intended to replace. To the extent the recovery compensates for losses to the marital estate, it is marital property. To the extent the recovery compensates for losses to a spouse's separate estate, it is his or her separate property.' " *Mistler*, 816 S.W.2d at 247, *quoting, Bandow v. Bandow*, 794 P.2d 1346, 1348 (Alaska 1990). Accordingly, if payments "replaced only [a spouse's] post-dissolution noneconomic and economic damages[, they are] properly designated as nonmarital property ... ". *Mistler*, 816 S.W.2d at 251.

Here, while no evidence was offered below as to the purpose for which the settlement dollars were being paid, since we are. remanding for other purposes, the court is also free to consider such evidence, as well as evidence as to whether the settlement has been finalized and in what amount, on remand.

## VII. DIVISION OF MARITAL DEBT

Both parties concede that the trial court is not required to divide marital debt, but that it is a commendable practice. *Vehlewald v. Vehlewald*, 853 S.W.2d 944, 950 (Mo.App.1993). Here, the trial court ordered Mr. Al–Yusuf to assume all marital debt and to pay it either to Ms. Al–Yusuf or directly to creditors. This was certainly within his authority. The court also ordered, however, that the payment of such debts should be considered to be lump sum maintenance to Ms. Al–Yusuf, and, accordingly, ordered that it should be non-dischargeable in bankruptcy. Mr. Al–Yusuf argues that the court was thus

required to make a determination that he could afford to pay the debts after paying for his own needs and child support, and that the court failed to make this finding.

Mr. Al–Yusuf is apparently referring to Section 452.335.2(8), which states that one of the factors which a court should consider in awarding maintenance is "[t]he ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." *Brueggemann v. Brueggemann*, 551 S.W.2d 853, 856 (Mo.App.1977). We agree that the court should consider this and the other factors listed in Section 452.335.2, as well as other relevant factors, in deciding to award maintenance. The statute is clear, however, that no one factor is dispositive. *See, e.g., Schroeder v. Schroeder*, 924 S.W.2d 22, 26 (Mo.App. 1996). In any event, it is evident from the trial court's finding "that [Mr. Al–Yusuf] has sufficient income and assets to satisfy all of these debts" that the court did consider Mr. Al–Yusuf's ability to support himself before requiring Mr. Al–Yusuf to pay the marital debts.

Because we remand for other reasons, however, we *sua sponte* direct the trial court to reconsider its order regarding the marital debt for another reason. As noted above, the court ordered that the payment of the debt by Mr. Al–Yusuf should be considered in the nature of lump sum maintenance to Ms. Al–Yusuf and should be non-dischargeable in bankruptcy. The reason for an order awarding maintenance is normally the court's belief that the spouse is unable to meet her future needs without maintenance. *Cates v. Cates*, 819 S.W.2d 731, 734 (Mo. banc 1991); § 452.335.1. That clearly does not apply here. In fact, our review of the record reveals that the principle item of debt was the mortgage on the house. The house was awarded to Mr. Al–Yusuf. The payment of the mortgage cannot be considered as fulfilling any future need of Ms. Al–Yusuf in this circumstance. Sometimes, a court will order lump sum maintenance as a method of equalizing the property division. For instance where the court has given one party the primary physical asset, the other may receive a compensatory payment. It may be that this was

what the court had in mind, or that it wanted to ensure that Ms. Al–Yusuf did not become burdened with the mortgage on the house awarded to Mr. Al–Yusuf should the latter file for bankruptcy. However, the Supreme Court directed in *Heilman v. Heilman,* 700 S.W.2d 843 (Mo. banc 1985), that "trial court should refrain from characterizing payments in lieu of property as 'maintenance.'" *Id.* at 845. On remand, the court should not characterize the order that the husband pay the marital debt as maintenance where, as here, it is clearly simply an aspect of the property division. It can explore other avenues of protecting Ms. Al–Yusuf from being liable on the mortgage on remand, if that was its concern.

## VIII. CHILD SUPPORT

### A. Distinction Between Rejection and Rebuttal of Form 14.

■ Mr. Al–Yusuf claims that the court erred in rejecting the parties' Form 14 calculations and in calculating a different amount of child support without first finding that "the award was just as well as appropriate as required by *Woolridge v. Woolridge,* 915 S.W.2d 372 (Mo.App.1996)." We disagree. The argument confuses the situation in which a trial court rejects both parties' Form 14s with the situation in which the court accepts the parties' Form 14s but finds the resulting child support amount to be rebutted by the record.

■ More specifically, in *Woolridge,*we explained that a court rebuts the parties' Form 14 calculations when the court believes that the parties have correctly completed the form, but that the resulting amount of child support is not just or appropriate on the facts of the case, and that a different amount of child support should be awarded. In such a case, before the court can enter an order of support for an amount different that the amount determined under Form 14, it must

explicitly or implicitly determine that the Form 14 amount is "unjust or inappropriate." [4]

Here, the court did not find that the parties correctly filled out the Form 14s but that the resulting amount was unjust or inappropriate. There was thus no need for it to include a finding in the record that the amount of child support determined under Form 14 was unjust or inappropriate. Rather, the court determined that the parties had incorrectly completed their Form 14 calculations because they had entered the wrong amounts for monthly income, work-related child-care costs, and health insurance. In such a case, the court has rejected rather than rebutted the parties' Form 14s. Where the court rejects the parties' Form 14s, it must do its own Form 14 calculation either by "completing a Form 14 worksheet and making it a part of the record, which we recommend as the most efficient and surest way of preserving the record, or by articulating on the record how it calculated its Form 14 amount," *Woolridge,* 915 S.W.2d at 381, so that this Court on appeal may conduct a meaningful review.

Here, the court below articulated for the record how it calculated its Form 14 amount, noting that it used a different amount than did the parties in determining the parties' income, child care costs, and health care costs. This is adequate to meet the requirements set out in Rule 88 and explained in *Woodridge.* Point denied.

### B. Child Care Costs.

Mr. Al–Yusuf complains that the court erred in calculating the child support amount, because it found that Ms. Al–Yusuf's child care costs were $262.00 per month, when the court should have found these expenses, after Ms. Al–Yusuf's re-calculation of her tax credit, to be $251.75 per month. The court can consider this issue on remand.

### C. Retroactive Child Support.

---

4. Appellant argues that it is reversible error to use only the word "unjust" and not also the word "inappropriate" in an order rebutting the Form 14 amount. Appellant cites no authority for this argument, and we find none. The requirement is that the court must find that the Form 14 amount is unjust *or* inappropriate, not unjust and

inappropriate. In any event, the Form 14 amount could hardly be appropriate if it were unjust, and could hardly be just if it were inappropriate. Thus, use of one word necessarily implies and encompasses the other in this context.

788

Mr. Al–Yusuf claims that the court erred in making the child support award retroactive, as there was no request for retroactive child support, the court failed to consider all relevant factors, and the court failed to specify a total amount of retroactive support or give Mr. Al–Yusuf credit for amounts previously paid. In support, he notes that he voluntarily paid $280 per month in child support from June through December of 1996 and that the court ordered him to make child support payment of $280 per month *pendente lite* beginning in January 1997. The dissolution order was entered on April 4, 1997. Ms. Al–Yusuf responds that the court did not err in ordering retroactive child support of $440, as such support is authorized by Missouri law in the trial court's discretion, and that Mr. Al–Yusuf is not entitled to any credits as he did not raise or present evidence on the issue of receiving credit for support payments below.

Under Section 452.340.1, the circuit court is authorized, but not required, to order retroactive child support. *Mistler*, 816 S.W.2d at 255. Furthermore, as Mr. Al–Yusuf concedes, the court can order retroactive child support regardless of whether it was prayed for in the petition. *In re Marriage of Kovach*, 873 S.W.2d 604 (Mo.App. 1993). "The circuit court's determination as to the effective date of a child support award will not be reversed without a clear showing of an abuse of discretion." *Snell v. Snell*, 916 S.W.2d 414, 416 (Mo.App.1996), citing *Porath v. McVey*, 884 S.W.2d 692, 697 (Mo. App.1994). The record reveals no basis for finding an abuse of discretion here, and we affirm the award of retroactive child support.

Mr. Al–Yusuf's argument that he is entitled to some credit for child support which he paid prior to the entry of the decree has more merit. We disagree with his contention that it was Ms. Al–Yusuf's burden to show what amount of child support he had voluntarily paid during the separation and how much was still owing, however. He offers no case law to support the latter contention, and we find none. If Mr. Al–Yusuf wanted the court to specifically include in its order a calculation as to how much credit he was entitled to for past payments and how

much he still owed of the retroactive child support ordered, he could and should have requested the court to do so below. Since we remand for other reasons, however, the court can also address this issue on remand.

For the reasons set out above, we reverse in part, affirm in part, and remand to the court below for further proceedings in accordance with this opinion. Those proceedings will include: 1) adopting a joint custody plan; 2) including a full legal description of the real property awarded; 3) including values for the marital property in its order; 4) revisiting division of the personal injury settlement in light of our discussion above; 5) deleting reference to lump sum maintenance in regard to the award of the marital debt to Mr. Al–Yusuf and considering alternative methods of protecting Ms. Al–Yusuf's monetary position if appropriate; 6) considering Mr. Al–Yusuf's claim of a $10 error in calculation of child care costs under Form 14; and 7) considering the amount of credit Mr. Al–Yusuf is entitled to receive toward his obligation to pay retroactive child support.

HANNA and EDWIN H. SMITH, JJ., concur.