Melissa Dawn MORTON, Appellant,

v.

William A. STOCKDALE, Respondent.

No. 19472.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 17, 1994.

obligation of her former husband William A. Stockdale (Father) for their child and the physical custody arrangements for the child. We affirm.

## FACTS

■ On May 6, 1992, the marriage of Mother and Father was dissolved. The marriage had produced one child, a son Cody, born May 17, 1991. The court awarded Mother "the exclusive care, custody and control of the minor child" and ordered that Cody was to reside with Mother at all times except June and August, during which he was to reside with Father. During June and August, Cody was to be with Mother "every other weekend." During months other than June and August, Cody was to reside with Father every other weekend and on specified holidays.[1]

Mother was responsible for Cody's transportation at the beginning of each "visitation" with Father, and Father was responsible for transportation at the end of "visitation." Mother was granted the right to remove Cody from Missouri.

The court ordered Father to pay child support of $238 a month, with the support obligation abated during June and August "while the child is in the custody of [Father]."

In December 1993, Father filed a motion in which he requested the trial court change the custody arrangements and award him child support. In his motion, he alleged what he characterized as a substantial change of circumstances, namely, that Mother had moved with Cody to Wichita, Kansas, and that she had not cooperated with Father's attempts to exercise his physical custody rights.

Albert D. Johnston, Carthage, for appellant.

No brief filed for respondent.

SHRUM, Chief Judge.

Melissa Dawn Morton (Mother) appeals from an order modifying the child support

1. Father does not dispute that the court awarded sole legal custody of Cody to Mother. The court used the word "visitation" to describe the periods of time Cody would be with Father and the weekends in June and August he would be with Mother. We do not believe the court intended to use "visitation" in the sense the word is used in § 452.400, RSMo Supp.1993, to describe the rights of a parent who is denied custody. The physical custody order, although not so labeled, was one of joint physical custody because the decree, although placing Cody with Mother the majority of the time, specified in writing significant periods of time during which Cody was to reside with Father or be under his care and supervision. §§ 452.375.1(2) and 452.375.7, RSMo 1986; *In Re Marriage of Johnson,* 865 S.W.2d 412, 415[1] (Mo.App.1993); *Nix v. Nix,* 862 S.W.2d 948, 951[2,3] (Mo.App.1993).

Mother responded by admitting her move to Wichita and denying she had interfered with Father's custody rights. She filed her own motion for a modification of the decree, alleging the following constituted a substantial change of circumstances: the physical custody arrangement had "not worked to the satisfaction of either party," Father had not paid his share of Cody's transportation between Wichita and Father's home in Carthage, and Father had enjoyed "a substantial increase" in income since the original decree.[2]

Mother requested the court modify the physical custody arrangements by reducing to one the number of weekends a month Cody was to be with Father and reducing Cody's time with Father in the summer to two uninterrupted weeks in June and two uninterrupted weeks in August; asked that responsibility for transporting Cody be modified so that Father would bear the expense of picking up Cody at the beginning of each period Cody was to reside with him and Mother would pay for Cody's return to her; and requested child support be recalculated in accordance with Rule 88.01.

On March 2, 1994, the court conducted a hearing on the motions. Nine witnesses, including Mother and Father, testified, primarily about the parties' on-going strife over implementation of Cody's physical custody arrangements.

Each party submitted a Form 14, Presumed Child Support Amount. The calculations were virtually identical, the one significant difference being the amount assigned to item 4b, "Custodial parent's reasonable work-related child care costs." Mother's Form 14 set the item 4b amount at $280 a month; in support of that figure she placed into evidence a paid check for $70 to her baby sitter representing one week's child care expense.[3] Father's item 4b figure was

$160. His evidentiary support for that amount consisted of the following:

"Q. Do you think $160 would be a fair number for child care costs for a working parent?

A. I imagine."

The differing item 4b entries resulted in a $57 dollar difference in the parties' presumed child support amounts. Father's obligation, according to Mother's calculations, was $297 a month; under Father's calculations, his obligation was $240 a month.

Mother offered no evidence to support her claim that Father had experienced "a substantial increase" in income since the date of the original decree. Father admitted his income had "gone up—not very much" since 1992, but he said he could not estimate how much it had risen.

Mother testified the drive between Wichita and Carthage took "three and a half or four hours, depending on traffic." Father testified he would like to have Cody with him for longer periods of time on fewer occasions than called for under the original decree, "before he starts school."

The trial court modified the physical custody arrangements and Father's child support obligation. Under the revised decree, Cody is to be with Father from 9 p.m. on the 9th day of each month until 5 p.m. on the 20th of each month. The court revised the holiday schedule, including a provision that in even numbered years Cody is to be with Father on Labor Day and the immediately preceding weekend, from 9 p.m. on the Wednesday prior to Thanksgiving to 5 p.m. on the Sunday after Thanksgiving, and from an unspecified hour on December 20 until 5 p.m. December 24. In odd numbered years Cody is to be with Father on Memorial Day and the immediately preceding weekend and from 9 a.m. on December 25 until 5 p.m. the following January 1. The court ordered Father to

---

2. Mother also alleged the child support award in the decree was not calculated in accordance with Supreme Court Rule 88.01 and the decree did not require Father to provide health insurance for Cody. Neither of these allegations describes circumstances that have changed since the date the decree was entered. *See* § 452.370, RSMo Supp.1990.

3. Mother short-changed herself. A $70–a–week child care expenditure results in an annual cost of $3640 and a monthly outlay of $303.33, not $280.

provide transportation at the beginning of all periods when Cody is to be with him; Mother shall provide transportation at the end of each such period.

The court revised Father's child support obligation to $208 a month and terminated the June and August abatement. In its revised decree, the court stated, "After considering all factors in 452.340, the Court finds that the application of the guidelines on child support would be unjust or inappropriate in this case."

## DISCUSSION AND DECISION

Mother raises four points on appeal. In Points I and II she contends there is no evidence to support the modification of the monthly child support award to $208, and she complains because the court did not explain how it arrived at that amount.

Rule 88.01 provides in pertinent part:

"There is a rebuttable presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is the amount of child support to be awarded.... It is sufficient in a particular case to rebut the presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is correct if the court ... enters in the case a written finding or a specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate."

*See also* § 452.340.8, RSMo Supp.1989.[4]

█ Rule 88.01 and § 452.340.8 require only what they say; the rule and statute do not require the trial court to enter written findings that state its reasons or recite the numbers it used to calculate the child support award. *Cohen v. Cohen*, 884 S.W.2d 35, 39 (Mo.App.1994).[5]

█ Although Rule 88.01 and § 452.340.8 do not require the trial court to state the reasons for its finding or reveal its calculations, principles of appellate review require there to be support in the record for a trial court finding that the presumed amount is unjust or inappropriate; we review that finding under the familiar standard of *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976). *Hamilton v. Hamilton*, 817 S.W.2d 937, 940[3] (Mo.App.1991). Following such a finding, the trial court is to determine the award based on consideration of all relevant factors including those enumerated in § 452.340 and Rule 88.01. We review the award for abuse of discretion. *Hamilton*, 817 S.W.2d at 940[4].

█ The record supports a finding that the presumed amount, by either parents' calculation, was unjust or inappropriate. The only difference in the parties' Form 14 work sheets was the dollar amount assigned to item 4b, "Custodial parent's reasonable work-related child care costs," which translated into differing presumed child support amounts. Each party completed the form based on the premise that Mother would have sole physical custody of Cody. However, under the revised joint physical custody

---

4. Rule 88.01 essentially paraphrases § 452.340.1, RSMo Supp.1988, and § 452.340.8, RSMo Supp.1989. The "relevant factors" include the following:

   (a) the financial needs and resources of the child;

   (b) the financial resources and needs of the parents;

   (c) the standard of living the child would have enjoyed had the marriage not been dissolved;

   (d) the physical and emotional condition of the child; and

   (e) the educational needs of the child.

   Rule 88.01. *See also* § 452.340.1, RSMo Supp. 1988. The enumerated factors do not constitute an exclusive list of what the trial court should consider. *Guignon v. Guignon*, 579 S.W.2d 664, 666[3] (Mo.App.1979).

5. In *Cohen*, the Court of Appeals–Eastern District specifically rejected the contrary view expressed in these three Western District opinions: *Summerville v. Summerville*, 869 S.W.2d 79 (Mo.App. 1993); *Clare v. Clare*, 853 S.W.2d 414 (Mo.App. 1993); and *Harding v. Harding*, 826 S.W.2d 404 (Mo.App.1992). The Western District has since disavowed the rule it established in those three cases. *Scoggins v. Timmerman*, 886 S.W.2d 135, 139 (Mo.App. W.D.1994).

   Of course, Rule 88.01 and § 452.340.8 do not forbid findings of greater specificity, and appellate review might be facilitated if the trial court were to disclose its reasons and reveal its calculations. We note that Mother did not avail herself of her opportunity under Rule 73.01(a)(3) to request the trial court prepare and file a brief opinion stating the grounds for its decision, including findings on controverted fact issues.

order, Cody is to reside with or be under the care and supervision of Father for eleven days of each month, in addition to various holidays. The physical custody arrangement supports a finding that a presumed child support amount premised on an assumption of sole physical custody in one parent was unjust or inappropriate.

The version of Form 14 that became effective April 1, 1994, less than one month after the trial court entered its revised decree, explicitly recognizes the need for an adjustment of the presumed amount of child support in a situation such as the one in this case. Comment D to the current Form 14 states, in part, "An adjustment to the presumed child support amount may be appropriate when the child or children spend substantial time with both parents."

Recalling our standard of review, we note the *Hamilton* court's observation, "It is apparent that the party against whom the presumption operates must adduce evidence to show that application of the relevant factors supports a finding that Form 14 should not be used." 817 S.W.2d at 940[2]. While we do not disagree with the burden of proof aspects of this statement, we do not believe a finding that the Form 14 presumed child support amount would be unjust or inappropriate should be limited to situations such as the one in *Hamilton* in which the noncustodial parent presented evidence that the presumed amount of child support was unjust because of her limited earning capacity and excessive expenses. In the instant case, the court made a monthly child support award lower than either party's Form 14 presumed amount in order to accommodate a custody arrangement not contemplated by the parties in the completion of their Form 14's. The nature of the physical custody arrangement provides support in the record for the court's finding that the presumed amount would be unjust or inappropriate. The court's finding

passes muster under the *Murphy v. Carron* standard of review.

■ Turning to the second step of our review, we conclude the amount of the revised child support award was not an abuse of discretion. Because of the testimonial and documentary support for Mother's work-related child care cost figure (and Father's lack of evidentiary support for his item 4b entry), the court could have, and likely did, accept Mother's Form 14 figures. As Mother acknowledges, it is possible the court, having accepted Mother's presumed amount, discounted it to account for the time Cody would be with Father. If this is the case, the court was more generous with Mother than simple arithmetic would require. Although Cody is to be with Father more than one-third of each month, the support award exceeds two-thirds of Father's presumed obligation as shown on Mother's Form 14. We note that Father's total annual child support obligation under the revised decree is $2496; under the prior decree, taking into account the June and August abatement, it was $2380 a year.

Mother's reliance on *Glenn v. Francis,* 864 S.W.2d 947 (Mo.App.1993), and *In Re the Marriage of V.A.E. and D.A.E.,* 873 S.W.2d 262 (Mo.App.1994), is misplaced. In *Glenn,* the trial court did not enter a finding that the presumed amount of child support was unjust or inappropriate, 864 S.W.2d at 953, and there was a factual dispute, unresolvable by reference to the record, concerning the father's income. *Id.* at 952. *Marriage of V.A.E. and D.A.E.* is similar to *Glenn.* The trial court did not enter the finding referred to in Rule 88.01 and § 452.340.8, and the parties disagreed about each other's monthly gross income. 873 S.W.2d at 270. Neither situation obtains in the instant case.

We reject Mother's Points I and II.[6]

In Point III, Mother contends the Christmas season custody arrangements are not in

---

**6.** Under Point II Mother also argues that, assuming the child support award reflected an abatement from the Form 14 amount to account for the time Cody will be with Father, the decree is erroneous because the court did not make the abatement conditional on Father's actually exercising his physical custody rights. Mother does

not raise this argument in her point relied on; thus it is not preserved for our review. Rule 84.04(d); *Williams v. McCoy,* 854 S.W.2d 545, 558–59 n. 9[18] (Mo.App.1993). Moreover, Mother cites no authority for her argument. Thus we deem it abandoned. *See Ray v. Upjohn Co.,* 851 S.W.2d 646, 656[26] (Mo.App.1993).

the best interests of Cody and are contrary to the weight of the evidence. While acknowledging that the custody plan would work well if she and Father lived in the same town, Mother argues the plan not only requires Cody to be on "dangerous highways during the middle of winter" for three and one half to four hours on Christmas Eve or New Year's Day but also deprives him of "a normal and joyful Christmas holiday." Mother urges us to modify the revised decree to permit her to have Cody every year on Christmas Eve, Christmas Day, and New Year's Day.

The only authority Mother cites in support of her argument is *In Re Marriage of Turner*, 764 S.W.2d 160 (Mo.App.1989). In that case, the trial court order provided that the child was to reside with the mother in Indiana, some 650 miles and eleven hours by motor vehicle from the father's home in Webb City, except for two periods of time with the father: June 20 to August 20 every year and annually from noon December 25 to January 1. Upon the appeal of the mother, this court reversed the winter physical custody arrangements and remanded with instructions to the trial court to modify the division of custody "so the child alternates the Thanksgiving and Christmas holidays in custody of the parents." *Id.* at 163.

■ *Marriage of Turner* does not support Mother's argument. The arrangements in the instant case accomplish the purposes for which we remanded the action in *Marriage of Turner*. Under the revised decree, Mother will have Cody with her on Thanksgiving Day and Christmas Eve of odd numbered years. During even numbered years Cody is with Mother on Christmas Day and New Year's Day. Mother's request that she have Cody with her every Christmas Eve and Christmas Day flies in the face of her own case authority.

Nor does *Marriage of Turner* support Mother's argument about highway travel. Under this court's instructions in *Marriage of Turner*, the child would be on the road for two 11-hour trips during the Thanksgiving and Christmas holiday period. In the instant case, the drive is three and one half to four hours, a drive necessitated by Mother's move to Wichita. We note Mother does not complain about the highway driving that will be necessary from January 2 through the end of winter, a period during which the weather generally is even less conducive to highway travel than the period from Thanksgiving through New Year's Day.

Under the physical custody arrangements of the revised decree, Cody will make about half the number of round trips between Wichita and Carthage than the original decree required. We believe this reduction in the number of transfers serves not only Cody's best interests but also will be more convenient for the parties. We note, however,

> "Where parents live apart, there is no way to provide for joint physical custody other than by transferring children from one parent to another at designated times. If there is to be 'frequent and continuing contact with both parents' as required by § 452.375.1(2), transfers are inevitable."

*In Re Marriage of Dempster*, 809 S.W.2d 450, 457 (Mo.App.1991). We reject Point III.[7]

In Point IV, Mother contends joint physical custody is inappropriate because there was no evidence that Mother and Father have "a commonality of belief concerning parental decisions and the willingness and ability to function as a unit in making those decisions." In her argument she recounts examples of incidents that illustrate "a prolonged history of friction and disagreement between the parties" and asserts that Father's "misconduct and poor attitude" will prevent the physical custody plan from working.

■ Initially, we note that under Rule 73.01(c)(2), we give due regard to the trial court's opportunity to judge the credibility of the witnesses. The trial judge may believe or disbelieve all, part, or none of the testimony of any witness, and the court may disbe-

---

7. Mother makes no argument to develop the assertion in her point relied on that the Christmas season custody arrangements are against the weight of the evidence. We deem the claim abandoned. *Estate of Goslee*, 807 S.W.2d 552, 556[4] (Mo.App.1991).

lieve testimony even when uncontradicted. *Nix v. Nix,* 862 S.W.2d 948, 951[7] (Mo.App. 1993). Thus we disregard Mother's claim that Father's versions of various disputes are "not worthy of belief" and "not credible."

Mother asks us to review a joint physical custody award using criteria more directly applicable to an award of joint legal custody. *See* § 452.375.1(1), RSMo 1986. *See also Lipe v. Lipe,* 743 S.W.2d 601, 602–03[2,3] (Mo.App.1988), and *Marriage of Johnson,* 865 S.W.2d at 415–18, in which the appellate court reversed orders of joint legal custody and affirmed orders of joint physical custody.

■■■■ As we have earlier noted, the revised decree reduces the number of transfers of Cody between Mother and Father while still assuring Cody of frequent and continuing contact with his parents as required by § 452.375.1(2), RSMo 1986. We agree that the ability of the parents to deal with one another is relevant to a consideration of whether a joint physical custody award is in the child's best interests. *See, e.g., Brisco v. Brisco,* 713 S.W.2d 586, 589 (Mo.App.1986). However, in the instant case, we are not convinced that the best interests of Cody require a different disposition. *See, e.g., Nix,* 862 S.W.2d at 951[8]; *In Re Marriage of Barnes,* 855 S.W.2d 451, 454[6] (Mo.App. 1993). We reject Mother's Point IV.

We affirm the judgment of the trial court.

FLANIGAN and MONTGOMERY, JJ., concurs.