**Glenda STEWART, Respondent,**

v.

**Thomas STEWART, Appellant.**

**No. WD 55362.**

Missouri Court of Appeals, Western District.

Submitted Dec. 10, 1998.

Decided April 6, 1999.

Timothy C. Brady, Fulton, for Appellant.

Paul Stingley, Fulton, for Respondent.

Before ULRICH, P.J.; SMART and EDWIN H. SMITH, JJ.

SMART, Judge.

In this dissolution action, Thomas Stewart challenges the trial court's characterization of the physical custody award to Glenda Stewart, and the propriety of the trial court's

child support award. Mr. Stewart claims that the trial court erred in its application of § 452.375, RSMo Supp.1997,[1] and abused its discretion in designating Mrs. Stewart the primary physical custodian when, in fact, the custody award amounted to joint physical custody. Mr. Stewart also argues that because both parties were awarded significant periods of time during which the children were under the care and supervision of each of them, the trial court erred in ordering Mr. Stewart to pay child support to Mrs. Stewart.

## Factual Background

Glenda and Thomas Stewart were married on November 3, 1978. Two children were born of their marriage. The Stewarts' dissolution was heard on November 20, 1997. The primary issues at the hearing were child custody and child support.

During the pendency of the dissolution, Mr. and Mrs. Stewart continued to reside together because they believed that the children needed to be with both of them as much as possible. Both Mr. and Mrs. Stewart actively participate in the children's extracurricular activities. Moreover, Mr. and Mrs. Stewart have similar views regarding religion, the discipline and education of the children, and extracurricular activities.

Mr. Stewart sought joint legal and physical custody of his children and asked the court to award physical custody to both parents, alternating weekly. Neither Mr. nor Mrs. Stewart wanted to keep the other from spending considerable time with the children. Mrs. Stewart agreed at the hearing that it was in the best interest of the children to have regular and frequent contact with both her and Mr. Stewart. At the hearing, Mrs. Stewart asked the court to award her primary physical custody of the children. Mrs. Stewart's recommendation as to visitation was that Mr. Stewart have visitation every other weekend and, on the off weeks, Monday, Tuesday and Wednesday. She also asked the court to award her child support in the amount calculated on her Form 14.

Mrs. Stewart agreed that she and Mr. Stewart should share in the costs of raising the children and "providing the shelter and housing for them" and stated that she was "willing to pay half of all costs of medical care that may be uninsured, not covered by insurance." Mrs. Stewart stated that the obligation of raising the children in a proper manner belonged to both parents.

On December 5, 1997, the trial court awarded Mr. and Mrs. Stewart joint legal custody of the children. The trial court awarded Mrs. Stewart primary physical custody of the children and allowed Mr. Stewart reasonable visitation, which "shall include" visitation from Friday through Sunday on alternate weekends and from Monday evening to Thursday morning on the other weeks. For purposes of establishing the parties' income, the court adopted Mr. Stewart's amended Form 14 and attributed monthly incomes of $1,345.00 to Mrs. Stewart and $1,386.67 to Mr. Stewart.[2] The trial court ordered Mr. Stewart to pay child support in the amount of $356.70 per month to Mrs. Stewart. Mr. Stewart appeals.[3]

## Custody Classification

Mr. Stewart first claims that the trial court abused its discretion by designating Mrs. Stewart as primary physical custodian of the children. Mr. Stewart also claims that there was no substantial evidence to support such an award of custody because the substance of the award grants each parent significant periods of time during which the children are under the care and supervision of each of them. Mr. Stewart claims that despite the trial court's description of the custody award, the award amounts to joint physical custody.

 Our standard of reviewing a custody determination is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Gulley v. Gulley*, 852 S.W.2d 874, 876 (Mo.

---

1. All statutory references are to the Revised Statutes of Missouri, Supp.1997, unless otherwise indicated.

2. At the time of the hearing Mr. Stewart was unemployed, and this income was imputed to him. He does not appeal the imputing of this income or the amount imputed.

3. Mrs. Stewart has not filed a brief in this appeal.

App.1993). We must uphold the decision of the trial court unless it is against the weight of the evidence, there is no substantial evidence to support it, or it erroneously declares or applies the law. *Id.*

The dissolution decree ordered:

Custody of minor children awarded jointly with primary physical custody to [Mrs. Stewart] subj[ect] to [Mr. Stewart's] right of reasonable visitation which shall include *visitation* commencing at 4 p.m. Friday and ending at 8 p.m. Sunday on alternate weekends with *custody* from 4 p.m. Monday to 8 a.m. Thursdays of alternate weeks.

(Emphasis added).

The court thus allowed Mr. Stewart specific time with the children of approximately three days during the week one week, and three days on weekends on the alternate weeks. This gives Mr. Stewart approximately six[4] days with the children each two week period.

Since the time of the adoption of the joint custody statute, the appellate courts have attempted to deal with the issue of how to label physical custody awards in those cases in which the trial court has considered the award to be one of sole physical custody, but has also awarded more visitation than the traditional "every other weekend and two weeks in the summer." It is not always clear in such cases whether the award is one of sole physical custody, as the trial court designated it, or one of joint physical custody. *See, e.g., Ibrahim v. Ibrahim,* 825 S.W.2d 391, 396 (Mo.App.1992) (stating that the adoption of a specific visitation schedule would amount to an award of joint physical custody). Also not clear is the extent to which the specific designation of physical custody really matters. Many times, when the decree specifically awards significant times with each parent, the matter, in practical terms, appears to be one of labeling.

For instance, there is often little or no practical distinction between an award characterized as joint physical custody, as in *Morton v. Stockdale,* 888 S.W.2d 362, 363 n. 1 (Mo.App.1994), and one characterized as primary physical custody to mother and "liberal visitation" to Father, as in *Patton v. Patton,* 973 S.W.2d 139 142 (Mo.App.1998). Joint physical custody does not require an equal amount of time with each parent. *Tilley v. Tilley,* 968 S.W.2d 208, 213 (Mo.App.1998). Child support may be awarded, as appropriate, in cases of joint physical custody just as in cases of sole physical custody. § 452.375.11, RSMo Supp.1997.

The Southern District has generally chosen to consider a declaration of sole physical custody as one of joint physical custody when the trial court has awarded substantial specific time with each parent. *See, e.g., In re Marriage of Johnson,* 865 S.W.2d 412, 415 (Mo.App.1993); *Nix v. Nix,* 862 S.W.2d 948, 951 (Mo.App.1993).[5] In accordance with § 452.375.8, a reclassification of a sole physical custody award to joint physical custody requires the adoption of a written plan of joint physical custody, unless the decree already contains provisions which are sufficient to constitute a written plan. There were at that time no specific guidelines as to what is to be included in a written plan of joint custody, *Gulley v. Gulley,* 852 S.W.2d at 877, n. 1,[6] and, the type of items covered in a plan

---

4. The court in this case considered the visitation time awarded as three weekend days (Friday 4 p.m. to Sunday 8 p.m.) and on alternate weeks four week days (Monday 4 p.m. to Thursday 8 a.m.). Although we see how one could conclude that the period from Friday at 4 p.m. to Sunday 8 p.m. is equal to three days (because most of the year the children are in school until 4 p.m.), we see no way to conclude that the period from Monday 4 p.m. to Thursday 8 a.m. equals *four* days. Therefore, we will consider the time allocation to Father as a total of six days every two weeks.

5. Often, the Southern District has reclassified a custody award *sua sponte* before addressing the parties' points on appeal. *Tracy v. Tracy,* 961 S.W.2d 855, 859 (Mo.App.1998); *Webber v. Johnson,* 956 S.W.2d 952, 953 n. 1 (Mo.App.1997); *Francka v. Francka,* 951 S.W.2d 685, 689 n. 1 (Mo.App.1997); *Rinehart v. Rinehart,* 877 S.W.2d 205, 207 (Mo.App.1994).

6. The new § 452.310.7 specifies items to be addressed in joint physical custody and joint legal custody. This provision requires the party moving for modification to submit a "proposed parenting plan" setting forth the specific arrangements that party believes to be in the best

of joint *legal* custody (such as a method for resolving disputes as to issues such as schooling) would differ from those included in a plan of joint physical custody. *Id. See Al-Yusuf v. Al-Yusuf,* 969 S.W.2d 778, 784 (Mo. App.1998).

Mr. and Mrs. Stewart were clearly candidates for both joint legal and joint physical custody. During the pendency of the dissolution proceedings, Mr. and Mrs. Stewart continued to reside together because they believed their children needed to be with both of them as much as possible. There is no evidence that Mr. and Mrs. Stewart cannot communicate reasonably. Further, Mr. and Mrs. Stewart have similar views regarding religion, the discipline and education of the children, and their extracurricular activities.

█ Although the trial court order named Mrs. Stewart primary physical custodian, we believe Mr. Stewart is correct that, based on the authorities we have reviewed, the award should be considered an award of joint physical custody. *Johnson,* 865 S.W.2d at 415; *Nix,* 862 S.W.2d at 951. Section 452.375.8 requires that, in cases of an award of joint physical custody, the court must, *sua sponte,* if necessary, adopt a written plan of joint physical custody. *Al Yusuf,* 969 S.W.2d at 784. The court here did provide for specific times with the children. It is not clear that anything else might need to be included in such plan and neither party offers any suggestions about what else might need to be included. Thus, it is not clear that Mr. Stewart is actually aggrieved by the trial court's designation of physical custody. We fail to see that we need to take any formal action as to the physical custody award.[7] Nevertheless, because there is no written plan of joint *legal* custody in the decree, and the court did expressly award joint *legal* custody, the case will be remanded for the adoption of a plan related to joint legal custody as a matter of plain error. *Gulley,* 852 S.W.2d at 877.

interest of the children. § 452.310.7, RSMo Supp.1998.

7. Mr. Stewart contends on appeal that if there must be a sole physical custodian, then he should be that custodian because the evidence would support such an award. We find that the trial

### Award of Child Support

Mr. Stewart next argues that the trial court abused its discretion in awarding child support to Mrs. Stewart, or, in the alternative, awarding child support only to Mrs. Stewart without a reciprocal award to Mr. Stewart because the children are in the custody of each parent for significant periods of time. Moreover, Mr. Stewart argues that his income is nearly identical to Mrs. Stewart's, Mrs. Stewart's financial resources far outweigh his, and there was no showing that Mrs. Stewart's financial needs when she had custody of the children would be higher than when he had custody of the children. We review this point under the same standard of review as Point I.

█ The primary purpose of awarding child support is to provide for the children's welfare. *Williams v. Williams,* 510 S.W.2d 452, 455 (Mo. banc 1974). "[A] [trial] court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable or necessary for his support[.]" § 452.340.1, RSMo Supp.1997. Six statutory factors are provided for the court's consideration when determining whether to award child support: (1) the financial needs and resources of the child; (2) the financial needs and resources of the parents; (3) the standard of living the child would have enjoyed had his parents not divorced; and (4) the child's physical and emotional condition and educational needs; (5) the legal and physical custody arrangements; and (6) the reasonable work-related child care expenses incurred by each parent. *Id.* An award of joint physical custody does not preclude an award of child support. § 452.375.11, RSMo Supp.1997. In a case of joint physical custody, the court is to be guided by the factors specified in § 452.340, just as in the case of an award of sole physical custody. *Id.*

court did not actually award sole physical custody, and we find the custody allocation to be supported by the evidence. Consequently, we grant no relief to Mr. Stewart under his first point on appeal.

■ The amount of child support calculated on Form 14 is presumed correct, but may be rebutted if the trial court determines that the amount calculated is unjust or inappropriate. § 452.340.9. There is no set equation to be used when determining whether the Form 14 amount of child support is unjust or inappropriate. *Woolridge v. Woolridge,* 915 S.W.2d 372, 379 (Mo.App.1996). The custodial parent is presumed to spend his or her share of the Form 14 child support obligation directly on the children. Form 14, Comment. A (1997). "A deviation from the presumed child support amount may be appropriate when … an award of joint physical custody results in the child or children spending substantially equal time with both parents. No specific amount of time is required for a deviation to be appropriate." Form 14, Comment D (1997).

Comment D also states:

To determine an appropriate deviation, the court shall consider which parent is likely to pay expenses of the child or children that are unaffected by the amount of time spent with each parent, such as clothing, activity fees, school, books, etc. The court shall ensure that such expenses … are shared in proportion to the parents' incomes and not in proportion to the time spent with each parent.

Thus, the court was faced with the responsibility of considering how expenses would be allocated, both in determining whether to deviate from the presumed amount, and in determining how much support should be awarded. It is not appropriate to ignore the realities of how the expenses are likely to fall on the respective parents. *See Leone v. Leone,* 917 S.W.2d 608 (Mo.App.1996). The trial court adopted Mr. Stewart's amended Form 14, (which, by the way, was the form applicable to joint physical custody), allocating a monthly income of $1,345.00 to Mrs. Stewart and $1,386.67 to Mr. Stewart and entered a "child support amount" of $703.00 per month.

In *Leone,* the trial court ordered joint physical custody, with Mother having physical custody of the children Monday through Thursday during the school year and three weeks during the summer, and Father having physical custody of the children Friday through Sunday during the school year and during the summer months. *Id.* at 611. The trial court ordered Father to pay child support during the school year and abated the child support during the summer, but did not order Mother to pay child support to Father during the summer. *Id.* In finding that the award of child support to Mother was proper, we stated:

Although the parties have nearly equal time with the children when the entire year is considered, Mother has custody of the children for a majority of the time during the school year. In addition, she has the children for nearly the entire school week. This means that she will be responsible for school-related expenses such as transportation, day-care, and extracurricular activities.

*Id.* at 612. However, we found that the trial court abused its discretion in failing to order Mother to pay child support to Father during the summer:

Except for a three week period, Father is to have custody of the children for the entire summer recess. Just as Mother will be responsible for school-related expenses during the school year, Father will have to incur day care and other related expenses during the summer.

*Id.*

As we have noted, in the present case the custody order places the children in Mr. Stewart's custody approximately six days within every two week period. The custody order does not make special provisions for, or otherwise distinguish, the children's school year from their summer vacation. Consequently, throughout the entire calendar year, the Stewart children spend approximately six days out of every fourteen with Mr. Stewart.

Here, there was no evidence of any expenses, school-related or otherwise, for which either party would be primarily responsible. The Stewart children will be spending time during the school week with each of the parents, and the evidence fails to show that either party would be solely responsible for school-related expenses. Also, the Stewart children participate in numerous extracurricular activities such as sports, 4–H, and cattle showing, all of which also generate expenses. These activities occur both on weekdays and weekends. Thus, the allocation of the ex-

pense will depend on the identity of the parent with whom the children are residing when the expense arises. During the summer months, each parent will have custody of the children during the work week, perhaps incurring child care expenses. Again, the parent with whom the children are residing will bear the expense.

 The parties' incomes are virtually identical, and Mr. Stewart's financial position is not superior to that of Mrs. Stewart.[8] Thus, in view of the custody allocation, we conclude that the trial court abused its discretion in ordering Mr. Stewart to pay child support in the amount of $356.70 (roughly half of the "child support amount" determined by the trial court) to Mrs. Stewart.[9] Taking into account the custody allocation, in accordance with *Leone*, we conclude that the support to be paid from Mr. Stewart should be an amount that corresponds only to the greater time that the children will be in the care of Mrs. Stewart. Utilizing the trial court's total support figure of $703.00 per month (or approximately $23.00 per day), and recognizing the children will be in Mr. Stewart's care for approximately 156 days each year, and in Mrs. Stewart's care approximately 209 days each year (53 days per year more than they will be with Mr. Stewart), we determine that the trial court should have determined the applicable child support to be the sum of $102.00 per month.[10]

## Conclusion

For all practical purposes, the trial court adopted a plan of joint physical custody. This observation renders moot Mr. Stewart's first point on appeal. In view of the fact that the trial court failed to adopt a specific joint *legal* custody plan, as required by law, we remand for revision of the decree to include a written plan of joint legal custody. § 452.375.8, RSMo Supp.1997. As for the child support award, for the reasons stated above, we vacate the award of child support, and remand the case to the trial court with directions to enter an award of child support in favor of Mrs. Stewart in the amount of $102.00 per month. Thus, the judgment is reversed as to the award of child support, and the case is remanded to the trial court for the adoption of a written plan of joint legal custody, and for the entry of an order of child support in accordance with this opinion.

ULRICH and EDWIN H. SMITH, JJ., concur.

---

8. It appears that, apart from the household furniture, which was roughly equally divided, Mrs. Stewart will realize an aggregate equity of $33,-000.00 and Mr. Stewart will realize an aggregate equity of $19,000.00.

9. The 1999 version of Form 14 includes "Line 11: Adjustment for a portion of the amounts expended during periods of overnight visitation or custody" which allows an adjustment of a party's child support obligation based upon the number of days the party has custody of the child during the year. *See generally* Form 14, Directions, Comments for Use and Examples for Completion of Form No. 14 (1999). Although Form 14 did not provide a line 11 adjustment in 1997, at the time this case was decided, the court was still free to depart from the presumed amount based upon the substantial time with each parent, in accordance with *Leone*.

10. Father has the children six days every two weeks, which means he has the children 156 days (6 days × 26). Since there are 365 days per year, Mother has the children 209 days each year (365 – 156 = 209). Mother thus has the children 53 days per year more than Father (209 – 156 = 53). Fifty-three days at $23.00 per day is $1219.00. $1219.00 ÷ 12 months = $102.00 per month.