Jeffery L. GATTON, Appellant,

v.

Dolly S. GATTON, Respondent.

No. WD 58234.

Missouri Court of Appeals,
Western District.

Jan. 30, 2001.

John William Gannan, II, Blue Springs,
for Appellant.

Robert G. Neds, Kansas City, for Respondent.

SPINDEN, Chief Judge.

On December 29, 1999, Judge Marco Roldan entered judgment adopting the findings and recommendations of Commissioner Sherrill Rosen to dissolve the marriage of Jeffery and Dolly Gatton. Married since 1990, the Gattons had an eight-year-old son at the time of the circuit court's judgment. The Gattons agreed to share legal and physical custody of their son, with Jeffery Gatton having physical custody on alternating weekends from Thursday to Monday and every Monday night—amounting to about six of every 14 days.

The Gattons introduced differing figures as the child support presumed correct under Form N° 14. They stipulated that Jeffery Gatton's income was $4000 a month and Dolly Gatton's income was $2753 a month. Dolly Gatton agreed to pay all of the child care costs and 40 percent of the cost of their son's extracurricular activities and unreimbursed medical expenses. Commissioner Rosen rejected both parties' Form N° 14s and calculated the presumed-correct child support amount as $509 a month. Rosen rebutted the Form N° 14 amount as being unjust or inappropriate and ordered Jeffery Gatton to pay child support of $300 a month. The circuit court also ordered Dolly Gatton to pay for the child's medical insurance through her employer.

■ In reviewing a circuit court's determination of child support, we will affirm it unless the court abused its discretion or erroneously applied the law. *In re Marriage of Gerhard,* 985 S.W.2d 927, 930 (Mo.App.1999). We defer to the circuit court's decision unless the evidence is "palpably insufficient" to support it. *Held v. Reis,* 193 S.W.2d 17, 20 (Mo.1946).

Jeffery Gatton argues first that the circuit court erred in establishing child support at $300 a month because it "failed to credit [him] properly for his substantial periods of custody." He asserts that, because the Gattons split custody of their son almost evenly, the circuit court should have applied a calculation similar to that in *Stewart v. Stewart,* 988 S.W.2d 622 (Mo. App.1999), in which the parties split custody in the same proportion as the Gattons. In *Stewart,* this court reversed the circuit court's award of roughly half of the presumed correct child support. The court then calculated a daily child support amount and apportioned it between the parents according to their respective periods of custody. The court ordered the father to pay the difference to the mother on a monthly basis. Jeffery Gatton does not specifically allege how the circuit court miscalculated the child support amount but suggests that the circuit court should have adopted the calculations in *Stewart.*

Jeffery Gatton overlooks one aspect of the *Stewart* decision. Unlike the Gattons' case, the parents' incomes in *Stewart* were "virtually identical, and Mr. Stewart's financial position [was] not superior to that of Mrs. Stewart." *Id.* at 627.

■ Section 452.375.12, RSMo Supp. 1999, declares that an order of joint custody does not preclude an order of child support. The statute directs the circuit court to apply the factors in § 452.340, RSMo Supp.1999, and the Supreme Court's rules in establishing the amount of support. The factors that the General Assembly deemed relevant in determining an amount are:

(1) The financial needs and resources of the child;

(2) The financial resources and needs of the parents;

(3) The standard of living the child would have enjoyed had the marriage not been dissolved;

(4) The physical and emotional condition of the child, and the child's educational needs;

(5) The child's physical and legal custody arrangements, including the amount of time the child spends with each parent and the reasonable expenses associated with the custody or visitation arrangements; and

(6) The reasonable work-related child care expenses of each parent.

Section 452.340.1. The same factors apply whether the circuit court orders sole physical custody or joint custody.

In § 452.340.1, the General Assembly directs the circuit court to consider the standard of living that the child would enjoy had the marriage not ended. The child's standard of living depends on both parents' resources, not the resources of the parent with whom he lives at a given time.

When the circuit court entered its judgment, Jeffery Gatton's financial resources exceeded Dolly Gatton's. The circuit court was obligated to consider this, along with its order that Dolly Gatton pay all child care expenses and medical insurance premiums. Moreover, the instructions for Line 11 of Form N° 14 directed the circuit court to adjust the presumed-correct child support amount by a certain percentage to account for periods when the parent obligated to pay support keeps the child overnight. The parties submitted a Form N° 14 on appeal, presumably one calculated by the circuit court,[1] that includes an adjustment of $79 a month to compensate Jeffery Gatton for the occasions when his child stays overnight. This amount is about 10 percent of the presumed-correct child support amount, and the instructions allow for a larger adjustment when the parent paying support has more than 109 periods of overnight custody. Form N° 14, Line 11 Directions. After applying an overnight-stay adjustment, the circuit court's Form N° 14 produced a child support amount of $509 a month, which the circuit court deemed unjust and inappropriate and adjusted downward to $300 a month. In rebutting the presumed-correct child support amount, the circuit court specifically noted that the Gattons share physical custody of their son.

■ The circuit court did not abuse its discretion in ordering Jeffery Gatton to pay $300 a month in child support. It clearly considered the parties' joint custody arrangement in determining the proper amount. Jeffery Gatton argues next that the circuit court, in ordering him to pay retroactive child support, did not credit him properly for money that he spent in providing for the child. The circuit court ordered Jeffery Gatton to pay $2753 in retroactive support. He contends that he established that he spent $1321 more than this in providing for the child. Dolly Gatton argues that Jeffery Gatton was not legally entitled to any credit and that any credit he received was subject to the circuit court's discretion.

■ Section 452.340.1 allows the circuit court, using the same factors as it would in making prospective child support, to order payment of child support retroactive to the date of the petition for divorce. The circuit court has considerable discretion in making child support retroactive, and we will not reverse its judgment unless it abuses its discretion. *Homfeld v. Homfeld*, 954 S.W.2d 617, 623 (Mo.App.1997). As the sole judge of witness credibility, the circuit court was free to disbelieve all or part of Jeffery Gatton's testimony. *Id.*

1. The Form N° 14 submitted by the parties is labeled, "Form 14 of the Court," in the supplemental legal file's index. The form appears to have been filed on March 15, 2000, which was more than two months after the circuit court's judgment. No record of the case docket is included. We recommend that the better practice is for the circuit court to include its own Form N° 14 calculations in the record. This is "the most efficient and surest way of preserving the record." Woolridge v. Woolridge, 915 S.W.2d 372, 382 (Mo. App.1996).

■ Jeffery Gatton complains that the circuit court did not explain why it did not credit him for all of the money that he had spent on the child. The statute does not require the circuit court to explain how it arrived at an amount. The circuit court apparently gave him full credit for the child care expenses that he claimed and full credit for unreimbursed medical and dental expenses.[2] The remaining expenses that he claimed were for medical and dental insurance premiums, school lunches, and extracurricular activities. Although Dolly Gatton admitted that Jeffery Gatton had paid for extracurricular activities, he enrolled the child without informing her, and the parties seemed confused about the child's medical insurance. The decision as to the amount of retroactive child support is within the circuit court's discretion, and we do not discern that the circuit court abused its discretion.

■ Jeffery Gatton's final point asserts that the circuit court erred in requiring Dolly Gatton to provide their child's health insurance. He argues that his plan was "superior" to hers with respect to deductibles and dental coverage, and that § 454.603, RSMo Supp.1999, required the circuit court to choose between the parents' plans. This section requires the circuit court to order health coverage when a plan is available at reasonable cost through a parent's employment.

At trial, Commissioner Rosen noted her concern about Jeffery Gatton's ability to maintain insurance coverage, based on his testimony that he obtained coverage through an oral agreement with his former employer. Dolly Gatton was prepared to secure coverage for the child through her insurance provider. She testified that the premium for him would be $70 a month, compared to $145 a month for Jeffery Gatton's insurance. She also said that the deductible and other costs would be similar. For the circuit court to order Dolly Gatton to pay for the child's health insurance, given the informal nature of Jeffery Gatton's coverage, was a proper exercise of the court's broad discretion.

For these reasons, we affirm the circuit court's judgment.

EDWIN H. SMITH and NEWTON, JJ., concur.

---

2. Jeffery Gatton claimed $230 in medical expenses and $182 in dental expenses. The circuit court allowed a credit for "health care expenses" of $412, the sum of the unreimbursed medical and dental expenses.