Michelle Lynn HUNT, Petitioner–
Appellant,

v.

Jason Vincent HUNT, Defendant–
Respondent.

No. 24167.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 28, 2002.

J. Michael Riehn, Cassville, for appellant.

Scott R. Pettit, Aurora, for respondent.

KENNETH W. SHRUM, Presiding Judge.

In this domestic relations case, Father and Mother filed separate motions asking that a dissolution decree (which purportedly gave them joint legal and physical custody of their children) be modified by eliminating joint custody provisions and adjusting child support. Specifically, each asked to be named sole custodian, that the other have visitation rights, and the non-custodial parent be ordered to pay child support. The trial court, however, did not grant relief to either party according to their request. Rather, it adjudged that the "joint legal and physical custody" be continued, but included a specific written parenting plan that listed when the children would reside with each parent. Mother appeals, presenting two claims of trial court error. This court affirms.

## FACTS

Jason Hunt ("Father") and Michelle Lynn Hunt ("Mother") were married on October 31, 1992. The children born of this marriage are Ashton Grace Hunt, born March 12, 1993, and Avery Vincent Hunt, born June 11, 1994.

After the parties separated in 1997, they signed a "Separation Agreement." The agreement, which was incorporated into their December 30, 1997, decree of dissolution, provided Father and Mother were to have joint legal custody and joint physical custody of Ashton and Avery. However, the terms of their written plan of joint physical custody lacked specificity, i.e., it simply provided that Father and Mother were "to share joint physical custody of the children whereby the children ... share as much time as practicable, one-half of the time together with each parent." In addition, the decree required Father to pay $162 per month in child support. The original decree also provided when a parent "has actual physical custody of the children, he or she shall not have overnight guests, a person of the opposite sex to whom he or she is not married, who is not related by blood or marriage."

Father's and Mother's testimony at trial differed regarding their success at sharing

physical custody on an equal basis. Mother testified that from "the beginning" they did not share custody equally, whereas Father claimed that until August 1999, they followed various schedules that gave them "equal time" with the children. Without recounting the evidence, each party's testimony (standing alone) reveals the parties followed a joint physical arrangement, i.e., the children resided with or were under the care and supervision of each parent for significant periods during the post-dissolution period. In effect, the parties operated under a changing, non-written, and non-specific joint physical custody plan until they became embroiled in this modification litigation.

As part of the parties' original property settlement agreement, Mother was to have possession of the parties' marital house until it sold and was to make the mortgage payments. However, she quit making the payments in August 1999 and moved into the home of her fiancée, Steven Dodson.[1]

At this time (August 1999), the parties' eldest child (Ashton) was about to start first grade. Mother and Father decided that shifting Ashton from one home to another during the week was not providing sufficient stability for her; consequently, they agreed Mother would have the children during the week and Father would have them on certain weekends. Exactly when the children resided with Father under the August 1999 arrangement is not entirely clear from the record. It is clear, however, from August 1999 through early February 2000, the children resided with

Mother on school days and that the three of them were living in the home of Dodson.

Father testified that Mother's living arrangement for herself and the children with Dodson ended on February 4, 2000. On that date, shortly after midnight, Mother and Dodson got into an argument and altercation. As a result, the children began living with Father. According to Father, from February 5, 2000, through mid-March 2000, the children stayed with him during the week and every other weekend. Moreover, Father testified that Mother stayed at his apartment an average of four times a week during that period. As Father explained it, "there were a lot of evenings that [Mother] would ... leave and go to Steve's house ..., sometimes leaving and coming back the next morning. But ... primarily she was staying at my place."[2]

At the time of trial, Mother was living with her mother and stepfather in Lockwood, Missouri, and was unemployed. As to that living arrangement, Husband testified Mother did not trust her mother "to keep the kids" because she drank "too much." Mother denied ever making such remarks to Father. As to her future living arrangements, Mother testified she was still engaged to Dodson, and they had planned to get married in June 2000. However, they had put off the marriage because of the custody dispute and pending hearing.

On August 28, 2000, while the parties' motions to modify the decree were still under submission but undecided, Father

---

1. The parties' marital house was ultimately lost via a foreclosure sale.

2. After Father got the children from Dodson's house in early February, he filed his motion to modify on February 25, 2000. On March 16, 2000, Mother filed her motion and on that date the court entered a temporary custody order. The temporary order called for a continuation of the joint physical custody arrangement, but prescribed a schedule of custody. This order, as amended in August 2000, remained until the court entered its final judgment.

filed a Motion to Modify the temporary custody order. *See* n. 2. He alleged that Mother had unilaterally decided to enroll the children in a public school in Golden City, Missouri, rather than send them to the Trinity Lutheran School at Monett, Missouri, where they had been attending and were already enrolled. Following a telephone hearing, the court modified the temporary custody order by temporarily increasing the amount of time the children were to reside with Father and ordered the children be placed in the Monett school. In doing so, the Court noted: "[G]iven the testimony at trial that [Mother] would be marrying and moving back to Monett, the enrollment at Golden City would not serve the children's best interest for stability."

On February 27, 2001, the court filed its judgment that awarded Father and Mother joint legal and joint physical custody but included a specific written parenting plan. Under the Court's plan, the children were to reside with Mother thirty-five to forty percent of the time and with Father the remainder of the time.[3] In addition, the court ordered Mother to pay Father child support of $185 per month and Father to maintain health insurance coverage for the children. Mother's appeal from the judgment followed.

## DISCUSSION AND ANALYSIS

■ Mother's first point advances five reasons why the trial court allegedly committed reversible error when it entered the

judgment described above. We reproduce those five reasons as listed in Mother's point relied on:

"a. [Father] failed to meet his burden of proof of showing any substantial, continuing change of circumstances in relation to [Mother] or the minor children herein which requires a modification of the prior custody Decree;

"b. The trial court ignored the presumption that [Mother] is a suitable parent to have primary custody of the minor children herein;

"c. The trial court ignored precedent that a modification of custody should not be entered upon slight changes in the status of the parents unless it is demonstrated by a preponderance of the evidence that the continued well-being of the children required a modification of custody;

"d. The trial court erred in considering which parent has a better home environment or has more wealth as those are not factors to consider in a modification proceeding;

"e. The trial court erroneously transferred custody without [Father] meeting his burden of providing evidence demonstrating that a significant change had occurred with the custodial parent or with the children that had directly affected the welfare of the children thereby requiring a modification."[4]

---

3. The specific written parenting plan adopted by the court included the following: "The children shall reside with [Father] except for the following specific times when the children shall reside with [Mother:] Every other weekend from 3:15 p.m. Thursday until 8:15 p.m. Monday" [and] "[f]or six consecutive weeks during the children's summer vacation from school." It also prescribed exact periods of holiday custody for Mother and what custody each parent would have on Father's Day, Mother's Day, and the children's birthdays.

4. Mother is simply wrong when she asserts in paragraph (d) of her point: "The trial court erred in considering which parent has a better home environment or has more wealth as these are not factors to consider in a modification proceeding." " 'A good environment and a stable home is generally considered as the most important single consideration in custody cases.' " *Newsom v. Newsom*, 976 S.W.2d 33, 39 (Mo.App.1998) (citation omitted). As for which parent had more wealth, the trial court recited in the judgment that:

■ Rule 84.04 prescribes what are acceptable appellate briefing practices.[5] Mother's brief is deficient for a multitude of reasons.[6] Even so, we opt not to dismiss this appeal because the only issues raised concern child custody. *In re Marriage of Horinek*, 41 S.W.3d 897, 899 (Mo. App.2001). However, our willingness to address the issues here should never be read as condonation of this type of appellate briefing practice.

The essence of Mother's first point is that the trial court erred when it set a specific schedule of joint physical custody without sufficient proof that a substantial change of circumstances had occurred within the meaning of § 452.410.[7] The premise of Mother's first point necessarily has two prongs: First, that the parties' 1997 dissolution decree contained a valid joint physical custody award, and second, that a joint physical custody award can only be adjusted and the parties' respective custody periods can only be re-apportioned upon proof that meets the "substantial change of circumstances" mandate of § 452.410. Because the first premise underlying Mother's point relied on is faulty, we need not address the second premise (although, arguably it too is faulty).[8]

■ When this dissolution of marriage occurred in December 1997, § 452.375.8, RSMo Cum.Supp.1995, provided, *inter alia*, that "[a]ny decree providing for joint custody *shall include a specific written plan setting forth the terms of such custody*." (Emphasis supplied.) Case law clarifies that the "specificity" requirement of this statute extends to both

---

"As between the parties, no preference has been given to either parent in the awarding of custody because of the parent's ... financial status." Mother cites us to nothing to discount what the judgment plainly recites.

**5.** All rule references are to Missouri Court Rules (2001) unless otherwise indicated.

**6.** Under Rule 84.04(d), a point relied on must "(A) identify the trial court ruling or action that the appellant challenges, (B) state concisely the legal reasons for appellant's claim of reversible error, and (C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Mother's point, for the most part, contains little more than abstract statements of law and does not adequately inform this court where, in the context of the case, the claims of error are supported. *See Lamar Adver. of Mo., Inc. v. McDonald*, 19 S.W.3d 743, 745 (Mo.App.2000). Moreover, Mother's statement of facts do not comply with 84.04(c) which states: "The statement of facts shall be a fair and concise statement of the facts relevant to the questions presented for determination without argument." Contrary to the rule, Mother's statement of facts is argumentative and omits facts favorable to Father. Finally, Mother's brief does not contain a table of contents, which is also a required

component of Rule 84.04. *See* Rule 84.04(a)(1).

**7.** All statutory references are to RSMo (2000) unless stated otherwise.

**8.** Cases exist suggesting that the "change of circumstances" standard of § 452.410 *must be met* even though the only change in custody is an *adjustment* of a joint custody plan. *In re Marriage of Pobst*, 957 S.W.2d 769 (Mo. App.1997); *Alt v. Alt*, 896 S.W.2d 519, 522–23 (Mo.App.1995). Other cases suggest the contrary, i.e., that § 452.410 is only implicated when custody is taken from a sole custodian and placed with another or shared with another. *See, e.g. Babbitt v. Babbitt*, 15 S.W.3d 787, 791 (Mo.App.2000); *Nichols v. Ralston*, 929 S.W.2d 302 (Mo.App.1996). Arguably, the latter view should be followed—although we need not decide that here—because in the analogous situation where a party asks to change visitation but not custody, a movant is not required to prove a change of circumstances. *See* § 452.400. Under § 452.400 the only analysis required is the "best interests" analysis. Why should proof of a change in circumstances be a precursor to re-adjusting a joint physical custody order but not for modifying visitation? In both instances, the custodial parent (or parents) remain the same.

types of joint custody, i.e., a specific plan is required for both a joint legal custody award *and* a joint physical custody award. *Stewart v. Stewart*, 988 S.W.2d 622, 625 (Mo.App.1999); *Al–Yusuf v. Al–Yusuf*, 969 S.W.2d 778, 784 (Mo.App.1998). "Section 452.375.8 requires that, in cases of joint physical custody, the court must, *sua sponte*, if necessary, adopt a written plan of joint physical custody." *Stewart*, 988 S.W.2d at 625 (citing *Al–Yusuf*, 969 S.W.2d at 784). Moreover, when reviewing a decree that expressly awards joint custody but does so without "a specific written plan setting forth the terms of such custody[,]" an appellate court will remand for the adoption of a specific written plan of joint custody "as a matter of plain error." *Stewart*, 988 S.W.2d at 625; *Al–Yusuf*, 969 S.W.2d at 784–85.

▮ Because the original decree here contained no specifics about when the children were to reside with each parent, the physical custody provisions were vague, ambiguous, and indefinite. Provisions in a decree relating to child custody or visitation should be definite and indefinite provisions are void and unenforceable. *Parker v. Parker*, 918 S.W.2d 299, 300[2] (Mo.App. 1996); *In re Marriage of Brooke*, 773 S.W.2d 496, 499 (Mo.App.1989). With exceptions not relevant here, provisions in dissolution decrees "must be sufficiently certain to be susceptible of enforcement in the manner provided by law without requiring external proof, and if it does not satisfy this requirement such a provision is void." *Id.* (citing *Payne v. Payne*, 635 S.W.2d 18, 22 (Mo.banc 1982)). Because the joint physical custody provision in this

dissolution decree was not susceptible of enforcement without external proof, we hold that it was void.

It appears that when the trial court ruled on the parties' motions to modify, it, in effect, seized that opportunity to adopt a joint physical custody plan that met the specificity requirements of § 452.375.8 (now § 452.375.9).[9] Because there was not a valid physical custody provision in the original decree, § 452.410 was not implicated when Father and Mother filed their motions to modify. Stated otherwise, since there was no valid physical custody order in existence, there was nothing to modify; consequently, proof of a change of circumstances per § 452.410 was not a precursor to entry of this judgment.

▮ Finally, we note that if Mother intends by her first point to charge the trial court with reversible error for allegedly changing custody from one parent to another without proof of a change of circumstances, the point lacks merit as that was not what the court did. The trial court did not change custody from one parent to another. We will not convict a trial court of an error it did not commit. *Jantz v. Brewer*, 30 S.W.3d 915, 920 (Mo. App.2000). If, on the other hand, Mother intends by her point to claim there was a valid joint legal custody order and the trial court erred by reapportioning physical custody without proving a § 452.410 change of circumstances, such argument fails based on our conclusion that the 1997 decree did not contain a valid custody order. Point I is denied.[10]

---

**9.** In 1998, § 452.375 was amended and the plan to be included in a joint custody decree was termed a "specific written parenting plan[,]" which was to outline the custody arrangements as specified in § 452.310.7. *See* § 452.375.9. Subsection 7 of § 452.310 calls for a specific schedule with regard to the

custody, visitation, and residential time for each child with each party including: weekday, weekend, and holiday schedules.

**10.** We do not ignore the court's finding that "continuing, permanent and substantial changes have occurred." This, however, was

Mother's second point maintains the trial court erred when it denied her request that she be given sole custody with visitation only to Father. She claims that the judgment entered is against the weight of the evidence, is not supported by substantial evidence and erroneously applies the law because (a) uncontroverted evidence shows Father's home was not suitable for him to have custody, (b) one of the children's school work suffered while she was in Father's custody, and (c) "[t]he parties never lived up to the joint physical custody arrangement agreed upon by the parties at the time the original Decree ... was entered."

Initially, we note that Mother's attempt at developing this point consists of thirty-eight lines of argument in which she directs our attention only to those facts that are favorable to her and ignores facts favorable to the court's action. A careful reading of Mother's argument shows that Mother's Point II claims of error are nothing more than thinly disguised contentions that the trial court should have accepted Mother's evidence and conclusions concerning alleged changes of circumstances. The trial court may, of course, disbelieve Mother's testimony, even if uncontradicted. *Broocke v. Broocke*, 873 S.W.2d 330, 332[3] (Mo.App.1994). Our limited inquiry is to decide if the trial court's judgment is supported by substantial evidence, is against the weight of the evidence, erroneously declares the law, or erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976); *Pobst*, 957 S.W.2d at 771[1]. We accord a trial court's judgment greater deference in custody decisions than in other cases, *Id.* at 771[2], and view the evidence "in the light most favorable to the judgment." *Kerr v. Louderback*, 35 S.W.3d 511, 513 (Mo.App. 2001).

We also note that, except for two cases supposedly cited for standards of review, Mother cites no authority to support her second point.[11] In domestic relations cases, as in any other civil case, a point of error left unsupported by citation of relevant authority when such authority is available, justifies an appellate court to consider the point abandoned. *In re Marriage of Hershewe*, 931 S.W.2d 198, 205[24] (Mo.App.1996). Even so, we have carefully reviewed the record *ex gratia* and find that the trial court's refusal to grant Mother sole custody and its decision to retain the joint physical custody arrangement but with a specific plan imposed, is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. Since Mother has cited no controlling authority

a gratuitous finding that the trial court did not have to make as a prelude to creating a specific written parenting plan. We need not decide if the trial court's "change of circumstances" finding was supported by the record. "That is because an appellate court, in an appeal from a judge-tried case, is concerned with only the correctness of the result, not the route taken to reach it." *In re Ulmanis*, 23 S.W.3d 814, 819[6] (Mo.App.2000). We will affirm a judgment that reaches the right result even if the trial court has given a wrong or insufficient reason for its decision. *Id.* at 819[7].

11. Mother's attempt at stating a standard of review includes the following: "As [Mother] was originally awarded custodial custody of the minor children, she was prima facie capable of handling that responsibility and the burden was upon [Father] to demonstrate otherwise. *Klaus v. Klaus*, 509 S.W.2d 479, 481 (Mo.Ct.App.1974)." If Mother uses the phrase "custodial custody" to mean that the original decree named her as "sole custodian," she is simply wrong; that is not what the record shows. She is also wrong if she intends to argue that the principle of law cited from *Klaus* applies when, as here, the court simply adopted a written parenting plan that met the statute's specificity requirement.

to support her contentions, we find that a detailed opinion regarding Point II would have no precedential value. Accordingly, we dispose of Mother's second point in accordance with Rule 84.16(b). Point denied.

The judgment is affirmed.

MONTGOMERY, J., and BARNEY, C.J., concur.